OPINION
{¶ 1} Defendant-appellant Joseph Becker appeals from his conviction for Failure to Obey the Legal Order of a Housing Inspector, in violation of Section 93.05 of the Revised Code of General Ordinances of the City of Dayton (hereinafter R.C.G.O.). *Page 2 
Becker claims that the City failed to properly serve notice of the housing violations. He also claims that the evidence in the record does not support the conviction. He further contends that he cannot be held criminally liable with regard to the property, since he is not the owner. He argues that if he is found to be an owner under the ordinance, the ordinance must be ruled unconstitutional as being overly broad. Becker argues that the trial court improperly ruled that R.C.G.O 93.05 is a strict-liability offense, with the result that he was barred from presenting evidence on the defense of inability to comply. Finally, Becker claims that the statute of limitations for prosecution of the offense had expired.
 {¶ 2} We conclude that Becker's claim that he cannot be held liable as an owner is without merit. We decline to find the statute unconstitutional, or that the statute of limitations for prosecution had expired. However, we agree that the trial court erroneously determined the ordinance to be a strict-liability law, and that the trial court thus erred by denying Becker the opportunity to present a defense. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 3} This appeal involves a residence located at 2065 Stanview Avenue in Dayton. The property is deeded to Walter Nelson, Trustee. On March 25, 2002, City of Dayton Housing Inspector, Mark Mueller, inspected the residence and issued another legal notice of violation. The notice was sent by certified mail to Becker. The return receipt was signed by Chad King. Mueller also posted the notice on the Stanview *Page 3 
Avenue residence.
 {¶ 4} On August 19, 2002, Becker entered into a compliance agreement regarding repairs to the property. The agreement extended the time for compliance to October 1, 2002. On October 1, Mueller and Becker agreed to another thirty-day extension of time for compliance. Becker contacted Mueller on November 20, 2002, at which time the violations had not been abated. In December, 2002, the matter was assigned to Housing Inspector, Mike Johnson. Johnson inspected the house in March, 2006, at which time the violations had still not been abated.
 {¶ 5} Thereafter, on August 16, 2006, Becker was charged with Failure to Obey the Legal Order of a Housing Inspector in violation of Section 93.05 of the City of Dayton Revised Code of General Ordinances (hereinafter R.C.G.O.). During trial, the prosecution filed a motion in limine seeking to have the trial court declare R.C.G.O. 93.05 a strict-liability offense. The trial court granted the motion. Following the bench trial, Becker was convicted as charged and sentenced accordingly. From his conviction and sentence, he appeals.
 II {¶ 6} Becker's First Assignment of Error states:
 {¶ 7} "THE CONVICTION OF JOSEPH BECKER IS IN VIOLATION OF HIS RIGHT TO DUE PROCESS PROTECTED UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO BECAUSE THE CITY OF DAYTON FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT MR. BECKER WAS PROPERLY SERVED WITH A COPY OF THE LEGAL ORDER OF THE *Page 4 
HOUSING INSPECTOR AS REQUIRED BY THE REVISED CODE OF GENERAL ORDINANCES OF THE CITY OF DAYTON."
 {¶ 8} Becker contends that he was not properly served with a copy of the March 25, 2002, legal notice of violation. In support, he claims that the certified mailing was sent to the wrong address, and that it was signed for by Chad King; a person whom the City failed to prove had any connection to Becker. Thus, he contends that his conviction must be reversed.
 {¶ 9} R.C.G.O. 93.05 provides the following regarding service of a notice of violation:
 {¶ 10} "(A)(5) [such notice shall] be served on the owner, occupant, or agent in person. However, this notice and order shall be deemed to be properly served upon the owner, occupant, or agent if a copy thereof is sent by registered or certified mail to his last known mailing address, residence, or place of business, and a copy is posted in a conspicuous place in or on the dwelling affected. If a registered or certified mail envelope is returned with an endorsement showing that service was refused, the notice may be served by ordinary mail to his last known mailing address, residence, or place of business. The mailing shall be evidenced by a certificate of mailing, and service shall be deemed complete on the date of mailing. If the registered or certified mail envelope is returned with an endorsement showing that service was unclaimed, the notice may be served by ordinary mail to his last known mailing address, residence, or place of business. The mailing shall be evidenced by a certificate of mailing, and service shall be deemed complete on the date of mailing, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery. *Page 5 
 {¶ 11} "(a) The notice and order may, in the alternative, be served by leaving it at his last known residence or place of business in the presence of a family member or other responsible person of suitable age and discretion who shall be informed of the general nature of the contents thereof.
 {¶ 12} "(b) If service is not accomplished by any of the above means, then a notification of the existence of the notice and order may be published at least once in a local newspaper of general circulation."
 {¶ 13} This ordinance essentially deems personal service on an owner as the best practice. However, the ordinance clearly specifies that notice is properly served when sent by certified or registered mail and also posted on the affected residence. If the certified or registered mailing is refused or unclaimed, the City may then properly accomplish service by ordinary mail to the owner's last-known address. If all the above methods fail, the City may publish the notice in the local newspaper.
 {¶ 14} In this case, the legal notice was sent, via certified mail, to Becker's last known address. It was accepted and signed for by Chad King. The notice was also posted on the residence. Becker claims that the notice was mailed to the wrong address and that the City failed to prove that he had any connection to Chad King.
 {¶ 15} We first note that Becker failed to file an administrative appeal of the notice and compliance order with the Housing Appeals Board as provided for by R.C.G.O 93.05(G) and R.C. 2506. Thus, he has effectively waived any claim that he was not afforded proper service, and this argument is barred by the doctrine of res judicata. State v.Scheinberger (1986), 33 Ohio App. 3d 263.
 {¶ 16} We further note that the evidence indicates that the notice was mailed to *Page 6 
the appropriate apartment building, but that the apartment number was omitted from the address. Of more importance, we note that Becker does not claim he did not receive the notice — he merely argues that it was not mailed to the appropriate address. Additionally, Becker repeatedly contacted the City regarding the violations following the issuance of the notice. Indeed, according to Mueller, two conference notices were mailed to Becker at the address used for the March 25 notice. Mueller testified that Becker responded to both notices. Thus, Becker's claim that he did not receive the legal notices at the address utilized by the City is disingenuous.
 {¶ 17} The purpose of the notice requirement in the ordinance is to notify an owner of violations. It is clear that Becker received notice. Therefore, the First Assignment of Error is overruled.
 III {¶ 18} Becker's Second and Third Assignments of Error provide as follows:
 {¶ 19} "THE COURT'S IMPLICIT FINDING THAT MR. BECKER IS THE OWNER, AGENT OF THE OWNER OR OTHER PERSON WHO CAN BE HELD LEGALLY RESPONSIBLE TO COMPLY WITH THE LEGAL ORDER OF A HOUSING INSPECTOR IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE OR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 20} "THE DEFINITION OF `OWNER' CONTAINED IN RGCO 93.02 IS UNCONSTITUTIONALLY OVERBROAD AND/OR IS UNCONSTITUTIONAL AS APPLIED TO MR. BECKER."
 {¶ 21} Becker contends that the trial court erred by holding him criminally liable *Page 7 
for the property maintenance issues relating to the property. In support, he argues that the State failed to prove that he was an "owner" of the property, as that term is defined by R.C.G.O 93.02. He further argues that even if he does fall into the definition of owner as set forth in the City ordinance, this court must find that definition unconstitutional because it is overly broad.
 {¶ 22} The standard for reviewing a claim of insufficiency is set forth in State v. Jenks (1981), 61 Ohio St.3d 259, wherein the Ohio Supreme Court held that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 23} We begin with Becker's contention that the State failed to present evidence sufficient to establish that he is an owner as defined under the ordinance.
 {¶ 24} Section 93.02 of the R.C.G.O. provides:
 {¶ 25} "`OWNER.' The owner or owners of the deed or freehold of the premises or lesser estate therein, contract buyer, a mortgagee or vendee in possession, assignee of rents, receiver, executor, administrator, trustee, lessee, or other person, firm, or corporation in control of a building; or their duly authorized agents. Any such person thus representing the owner shall be bound to comply with the provisions of this chapter to the same extent as if he were the owner." *Page 8 
 {¶ 26} In this case, there is evidence that, if believed, would persuade a reasonable mind that Becker is an owner as defined under the ordinance. Specifically, there is evidence that after the notice of violation was posted on the property and mailed to the last known address for Becker, Becker held himself out as being responsible for repairing the building. According to the testimony of the inspector, Becker discussed the violations and necessary repairs with the inspector. Becker asked for extensions of the date for compliance with the notices. Becker also appeared in person at a conference to discuss the repairs and to seek an extension of time to comply. Mueller testified that he understood Becker to be the person in control of the property. Finally, there is evidence that Becker signed a compliance agreement extension as the owner of the property. Based upon this evidence, we conclude that a reasonable finder of fact could find that Becker was in control of the property and was therefore an owner, as defined by the ordinance.
 {¶ 27} We next address Becker's contention that the ordinance is unconstitutional. In support, he contends that the ordinance is overly broad. However, his argument in support is based upon the contention that the Stated failed to present any evidence establishing that he had the authority to contract for or permit the required work. Thus, in reality, this assignment of error re-argues the sufficiency of the evidence regarding his status as an owner. Given the evidence cited above, we conclude that the State presented evidence sufficient to show that Becker had the requisite authority and control.
 {¶ 28} The Second and Third Assignments of Error are overruled. *Page 9 
 IV {¶ 29} The Fourth Assignment of Error states as follows:
 {¶ 30} "THE TRIAL COURT WAS IN ERROR WHEN IT SUSTAINED THE CITY'S MOTION IN LIMINE FINDING THAT RCGO 93.05 IS A STRICT LIABILITY OFFENSE."
 {¶ 31} Becker contends that the trial court erred by granting the City's motion in limine and by finding that R.C.G.O. is a strict-liability offense.
 {¶ 32} We begin by noting that the trial court's decision was based upon this court's prior opinion in City of Dayton v. Platt (Mar. 29, 1989), Montgomery App. No. 11028, wherein we held that "[b]ecause Section (B) of 93.05 does not require knowing or negligent failure to comply, a violation of that section is a strict liability offense." Id. at *5.
 {¶ 33} However, our holding in Platt has been superseded by the decision of the Supreme Court of Ohio in State v. Collins,89 Ohio St. 3d 524, 2000-Ohio-231. In Collins, the Court noted that the General Assembly has set forth, in R.C. 2901.21(B), the test for determining whether an offense is a strict-liability offense. That statute provides:
 {¶ 34} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 35} The Supreme Court of Ohio, based upon its interpretation of *Page 10 
R.C. 2901.21(B), held that "[i]t is not enough that the General Assembly in fact intended imposition of liability without proof of mental culpability. Rather the General Assembly must plainly indicate thatintention in the language of the statute." Collins, at 530, (emphasis added).
 {¶ 36} Thus, any finding that R.C.G.O. 93.05 is a strict-liability offense must be based upon a finding that the language of that ordinance plainly indicates that intention. The ordinance provides, in pertinent part, as follows:
 {¶ 37} "Sec. 93.05. Notice of violations.
 {¶ 38} "(A) Whenever the housing inspector determines that there has been a violation of any provision of this chapter, * * * he shall give notice of such violation to the person responsible therefor and order compliance with this chapter as hereinafter provided. * * *
 {¶ 39} "(B) Any person failing to comply with the order served pursuant to this section shall be deemed guilty of a misdemeanor.
 {¶ 40} "Sec. 93.05.2. Duty to timely remediate and enforcement costs.
 {¶ 41} "(A) A person served with a notice of violation pursuant to § 93.05 shall:
 {¶ 42} "(1) Remediate the violations listed therein within the time specified in the notice, or any extension of time granted in writing by the Housing Inspector, or the Housing Appeals Board; and
 {¶ 43} "(2) Schedule and pass a final inspection with the Housing Inspector verifying compliance with the notice of violation.
 {¶ 44} "The final inspection required by (A)(2) of this section is in addition to any other inspections required by law for work performed in remediating the violations listed *Page 11 
in the notice of violation.
 {¶ 45} "* * *
 {¶ 46} "(C) Each notice of violation issued pursuant to § 93.05 shall include the following wording:
 {¶ 47} "It is the responsibility of the person served with this notice of violation to timely remediate the violation(s) listed in this notice and to schedule a final inspection by the City's Housing Inspector to verify compliance with this notice. This final inspection is in addition to any other inspections required by law for work performed in remediating the violations listed in this notice. Failure to timely remediate the violation(s) listed in this notice, and/or to schedule and pass a final inspection may subject you to administrative and other costs incurred by the city in remediating, or causing the remediation of, the violations listed in the notice of violation served upon the person."
 {¶ 48} While the above provisions do not specify any degree of culpability, they likewise do not contain language plainly indicating an intent to make the offense one of strict liability. Therefore, we conclude that under State v. Collins, supra, the offense with which Becker is charged is not a strict-liability offense.
 {¶ 49} Becker's Fourth Assignment of Error is sustained.
 V {¶ 50} Becker's Fifth Assignment of Error is as follows:
 {¶ 51} "THE TRIAL COURT WAS IN ERROR WHEN IT SUSTAINED THE CITY'S MOTION IN LIMINE AND RULED THAT BECKER COULD NOT INTRODUCE ANY EVIDENCE THAT HE WAS UNABLE TO COMPLY WITH THE LEGAL ORDER." *Page 12 
 {¶ 52} Becker argues that the trial court erred by denying his request to present a defense based on inability. In support, he notes that the trial court's decision was based upon its erroneous conclusion that R.C.G.O. 93.05 is a strict-liability offense.
 {¶ 53} Given our conclusion, in Part IV, above, that the cited ordinance is not a strict-liability offense, we agree that the trial court's decision denying Becker's request to present a defense based upon inability to comply was erroneous.
 {¶ 54} The Fifth Assignment of Error is sustained.
 VI {¶ 55} Becker's Sixth Assignment of Error states:
 {¶ 56} THE CONVICTION OF THE DEFENDANT IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND, ALTERNATIVELY, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 57} Becker contends that the City failed to adduce evidence sufficient to support his conviction. Given our disposition of Becker's Fourth and Fifth assignments of error, we conclude that we need not address his Sixth Assignment of Error.
 {¶ 58} The Sixth Assignment of Error is overruled as moot.
 VII {¶ 59} The Seventh Assignment of Error provides as follows:
 {¶ 60} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN VIOLATION OF MR. BECKER'S FEDERAL AND STATE OF OHIO DUE PROCESS RIGHTS WHEN *Page 13 
IT FOUND HIM GUILTY OF AN OFFENSE THE COMPLAINT FOR WHICH WAS NOT FILED UNTIL AFTER THE EXPIRATION OF THE STATUTE OF LIMITATIONS."
 {¶ 61} Becker contends that the statute of limitations for prosecution of the within offense expired two years from the date of the notice of violation which was issued on March 23, 2002. We disagree.
 {¶ 62} R.C.G.O. 130.06 provides:
 {¶ 63} "(A) Except as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:
 {¶ 64} "(1) For a misdemeanor, other than a minor misdemeanor, two years.
 {¶ 65} "* * *
 {¶ 66} "(D) An offense is committed when every element of the offense occurs. In the case of an offense of which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first."
 {¶ 67} R.C.G.O. 93.99 states as follows:
 {¶ 68} "(A) A violation of the requirements of * * * §§ 93.05 * * * shall constitute a misdemeanor of the third degree, punishable as provided in § 130.99 and each day such violation is continued shall constitute a separate offense."
 {¶ 69} The initiating date for the statute of limitations in this case is not the date that the notice of violation was rendered. Rather, it is the date, and all subsequent dates, on which Becker failed to comply with the notice's order to abate the violations. Each day that Becker failed to abate the violations constitutes a separate offense. *Page 14 
 {¶ 70} It is clear from the record that the City agreed, on several occasions, to waive its compliance date, at Becker's request. It is further clear that as of March 3, 2006, Becker had still failed to rectify the violations. Thus, the statute of limitations for prosecution began to run on that date for the offense. The complaint, which alleged that the offense occurred on March 3, 2006, was filed on August 16, 2006, well within the limitations period. The Seventh Assignment of Error is overruled.
 VIII {¶ 71} Becker's Fourth and Fifth assignments of error having been sustained, and all other assignments of error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 BROGAN and DONOVAN, JJ., concur. *Page 1