OPINION
{¶ 1} Defendant-appellant Louis B. Robinson appeals from his conviction for Failure to Obey the Legal Order of a Housing Inspector, in violation of Section 93.05 of the Revised Code of General Ordinances of the City of Dayton (hereinafter R.C.G.O.) Robinson contends that the trial court erred by determining that the offense of which he *Page 2 
was convicted, in a bench trial, is a strict-liability offense; that this constitutes a structural error, under the authority of State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, reconsidered at 119 Ohio St.3d 204, 2008-Ohio-3749; and that the trial court erred in deciding that he could not present an affirmative defense of impossibility to have complied with the order.
 {¶ 2} Based upon a number of cases recently decided by this court, the State concedes, and we agree, that the trial court erred in determining that the offense of which Robinson is accused is a strict-liability offense. Because the State does not argue, and it does not appear, that this error is harmless, it is immaterial whether this constitutes structural error. Finally, we agree with the State that any issue of impossibility that Robinson could have raised, but did not raise, in his administrative challenge to the propriety of the order that he is accused of violating must be deemed to be subject to the doctrine of res judicata. However, we cannot determine, on this record, whether under the R.C.G.O. Robinson could have asserted impossibility as part of his administrative challenge to the propriety of the order, and it is clear, in any event, that any asserted impossibility arising out of facts subsequent to Robinson's opportunity under the R.C.G.O. to challenge the propriety of the order could not have been raised by him as part of that challenge. Upon remand, the trial court must determine whether Robinson had any opportunity to assert impossibility as part of his administrative challenge to the propriety of the order. If so, to that extent, Robinson's asserted affirmative defense of impossibility would be barred by res judicata.
 {¶ 3} For these reasons, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion. *Page 3 
 I {¶ 4} Fred Lipscomb, a City of Dayton Housing Inspector, inspected residential property owned by Sharon Miller in March, 2005. Two days later, Lipscomb issued the order the alleged violation of which is the basis for the judgment from which this appeal is taken. That order ordered the remediation of a number of violations of the Dayton Housing Code that Lipscomb had found when he inspected the property.
 {¶ 5} Among several methods of service of the order used by Lipscomb, he personally served it upon a woman at the property who led him to believe that she was Robinson's wife.
 {¶ 6} The order included instructions for initiating an administrative appeal process. No administrative appeal was initiated.
 {¶ 7} In January, 2007, Robinson acquired title to the property from Sharon Miller in a quitclaim deed that referenced the cancellation of an earlier recorded land installment contract between them. During almost two years preceding this transfer, Lipscomb had talked with Robinson about the repairs to the property that had been ordered. Robinson indicated that he was attempting to comply, but that his lack of funds was making things difficult.
 {¶ 8} In late June, 2007, a complaint was filed charging Robinson with Failure to Obey the Legal Order of a Housing Inspector, in violation of R.C.G.O. Section 93.05.
 {¶ 9} Although this is not entirely clear from the record, Robinson asserts, and the State does not deny, that the trial court ruled, in connection with the State's motion *Page 4 
in limine, that R.C.G.O. Section 93.05 is a strict-liability offense, so that the State would not be required to prove any particular mental state of culpability, or mens rea. In fact, the State now confesses error in this regard, based upon a series of recent decisions by this court. It is clear from the trial court's post-trial decision and entry that:
 {¶ 10} "The City moved the Court not to allow defenses that could have been raised to the Housing Appeals Board. The Court granted the City's Motion in Limine pursuant to City of Dayton v. Wilson (July 6, 2006), Dayton Mun.Ct. Case No. 05CRB14343."
 {¶ 11} In its post-trial decision and entry, the trial court also recited that:
 {¶ 12} "Defense Counsel asked to proffer, for purposes of appeal, that Defendant would have testified that it was financially impossible for him to complete the Legal Order because he only made $20,000 in 2005, was retired, had no social security, and was sole provider for his family. Defense Counsel also asked to proffer a photograph of Defendant's driveway as Defendant's Exhibit A. The Prosecutor objected to the format of the Proffer because no one was put on the witness stand or sworn in and no questions were presented to anyone. The Court accepted the Proffer and advised that it would take the matter under advisement.
 {¶ 13} "The Court finds that the City submitted evidence proving beyond a reasonable doubt that Defendant failed to obey the Legal Order of a Housing Inspector, in violation of RCGO 93.05. The Court further finds that the form of the Proffer is sufficient. A written Transcript of the Proffer has been prepared for purposes of appeal."
 {¶ 14} A judgment of conviction was entered, and Robinson was fined $500 and *Page 5 
ordered to pay costs. The fine was suspended upon certain conditions. From his conviction and sentence, Robinson appeals.
 II {¶ 15} Robinson's Second Assignment of Error is as follows:
 {¶ 16} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT GRANTED THE CITY OF DAYTON'S MOTION IN LIMINE AND BARRED THE DEFENSE FROM ASSERTING THAT THE DEFENDANT-APPELLANT DID NOT RECKLESSLY VIOLATE R.C.G.O. 93.05 AND SUBSEQUENTLY TREATED R.C.G.O. 93.05 AS A STRICT LIABILITY OFFENSE."
 {¶ 17} The State confesses error, based upon a series of recent decisions of this court that because R.C.G.O. Section 93.05 does not clearly indicate that it is intended to constitute a strict-liability offense, the default mental culpability state of recklessness applies.State v. Moler, Montgomery App. No. 22106, 2008-Ohio-2081; State v.Becker, Montgomery App. No. 22107, 2008-Ohio-2074; and State v.Kelley, 178 Ohio App.3d 569, 2008-Ohio-5167.
 {¶ 18} Robinson's Second Assignment of Error is sustained.
 III {¶ 19} Robinson's Third Assignment of Error is as follows:
 {¶ 20} "THE JUDGMENT OF CONVICTION AGAINST THE DEFENDANT-APPELLANT IS VOID AND SHOULD BE VACATED ON THE GROUND THAT THE COMPLAINT WAS DEFICIENT AS A MATTER OF LAW AND THE DEFENDANT-APPELLANT *Page 6 
NEVER RECEIVED NOTICE OF ALL ESSENTIAL ELEMENTS THAT THE PROSECUTION MUST PROVE CONTRARY TO THE GUARANTEES OF DUE PROCESS OF LAW."
 {¶ 21} Although this assignment of error is couched in sweeping terms, the argument in support of this assignment of error relies uponState v. Colon (2008), 118 Ohio St.3d 26, 2008-Ohio-1624, as reconsidered at 119 Ohio St.3d 204, 2008-Ohio-3749. Specifically, Robinson argues that, under the authority of the Colon decisions, the failure to treat his offense as including as an element the mens rea of recklessness so permeates the proceedings, from the indictment's failure to include an allegation of recklessness to the trial judge's failure to deem recklessness to be an element, that the error must be regarded as structural.
 {¶ 22} The significance of structural error, compared and contrasted with plain error, is laid out in Johnson v. U.S. (1997), 520 U.S. 461,117 S.Ct. 1544, 137 L.Ed.2d 718. Plain error is error that was not brought to the attention of the trial court, but which is both sufficiently plain and sufficiently prejudicial as to merit reversal on appeal despite the fact that it was not brought to the attention of the trial court. Structural error is error that affects the entire structural framework of the proceedings to such an extent that harmless-error analysis is inappropriate; i.e., prejudice is presumed. Id., at 468. Of course, an error might satisfy both tests, so that the error would be both plain and structural.
 {¶ 23} An archetypical example of structural error would be depriving a criminal defendant of a jury trial when the defendant is entitled by law to a jury trial. It will obviously be impossible to determine whether the fact that the defendant was tried to *Page 7 
the bench, rather than to a jury, adversely affected the outcome, but the failure to provide a jury trial to a defendant who is entitled to one is of structural dimension, so that proof of prejudice is not required. And yet, the right to a jury trial, where the right exists, may obviously be waived. In petty offense cases, the right to a jury may even be waived by inaction. Crim. R. 23(A).
 {¶ 24} In the Colon decisions, the Supreme Court of Ohio held that if the failure to deem an offense to involve a particular mens rea as an element permeates the entire proceedings, the defendant need not have raised that issue in the trial court as a predicate to obtaining reversal on appeal. Curiously, although this would seem to involve a plain-error analysis, the Supreme Court labeled this as a structural error.
 {¶ 25} Whether the permeation of proceedings with an incorrect notion that an offense is a strict-liability offense is deemed to invoke plain-error analysis or structural-error analysis, Robinson's claim that these proceedings are permeated with that incorrect notion, which the second Colon decision regarded as crucial, is immaterial to this appeal. Under a plain-error analysis, the permeation of the proceedings with the error would operate to relieve Robinson with the burden of having raised the error in the trial court. But he clearly did raise the error in the trial court. Similarly, under a structural-error analysis, Robinson would be relieved of the burden of demonstrating that the error has prejudiced him. But the State concedes that the error is not harmless, and we agree.
 {¶ 26} We conclude that it is unnecessary to determine, in this appeal, whether there was such a permeation of the proceedings in the trial court as to invoke either plain-error analysis or structural-error analysis. Robinson is entitled to reversal under a *Page 8 
conventional-error analysis, without resort to either plain error or structural error. Consequently, Robinson's Third Assignment of Error is overruled as moot.
 IV {¶ 27} Robinson's First Assignment of Error is as follows:
 {¶ 28} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT ACTED CONTRARY TO LAW AND GRANTED THE CITY OF DAYTON'S MOTION IN LIMINE TO PRECLUDE THE DEFENDANT-APPELLANT FROM PRESENTING ANY DEFENSE OF IMPOSSIBILITY OF PERFORMANCE."
 {¶ 29} Robinson relies upon R.C. 2901.21(A)(1) for the proposition that a person is not guilty of an offense unless, in the case of an offense of omission, that person's liability is based on conduct that the person is capable of performing.
 {¶ 30} The State does not disagree with this proposition, but asserts that Robinson's affirmative defense of impossibility is barred by the doctrine of res judicata, since he could have raised this issue as part of a challenge to the propriety of the order directing him to make repairs to his property in the administrative appellate proceedings available to him under the R.C.G.O., but he did not avail himself of these proceedings.
 {¶ 31} The trial court characterized this issue as follows in its post-trial decision and entry:
 {¶ 32} "* * * . Defendant also stipulated to the fact that he did not pursue an administrative appeal with the Housing Appeals Board. The City moved the Court not to allow defenses that could have been raised to the Housing Appeals Board. The Court *Page 9 
granted the City's Motion in Limine pursuant to City of Dayton v.Wilson (July 6, 2006), Dayton Mun.Ct. Case No. 05CRB14343."
 {¶ 33} To the extent that the trial court adopted the view that Robinson was not allowed to assert defenses that could have been raised to the Housing Appeals Board, we agree. What we are unable to determine, from this record, is whether Robinson could, in fact, have asserted the defense of impossibility as a challenge to the propriety of the order. Neither party has placed in the record portions of the R.C.G.O. that address this question. Furthermore, even if Robinson could, under the framework of the administrative appeal allowed by the R.C.G.O., have challenged the propriety of the order by asserting that it was impossible for him to comply with that order, any res judicata effect resulting therefrom would be limited to an assertion of impossibility arising out of facts and circumstances existing at the time that he could have perfected an administrative appeal. In other words, assuming that he could have presented an existing impossibility issue to the administrative tribunal, he could hardly have been expected to present to it an issue of impossibility arising out of facts and circumstances that only subsequently arose.
 {¶ 34} We are unable to determine, upon this record, that the trial court committed the error assigned. Upon remand, if Robinson tenders a defense of impossibility, the trial court, in evaluating the application of the doctrine of res judicata, must determine whether that defense, or some portion thereof, could have been presented as part of an administrative appeal. If so, and to that extent, Robinson would be barred by res judicata from presenting that defense. In reaching that conclusion, we take no position whether the evidence of impossibility proffered by Robinson is either *Page 10 
sufficient or compelling.
 {¶ 35} Robinson's First Assignment of Error is overruled.
 V {¶ 36} Robinson's Second Assignment of Error having been sustained, his Third Assignment of Error having been overruled as moot, and his First Assignment of Error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN and FROELICH, JJ., concur.
Copies mailed to:
Patrick J. Bonfield
Deirdre E. Logan
Mary E. Welsh
Adelina E. Hamilton
 Hon. Dennis J. Greaney *Page 1