OPINION
{¶ 1} Defendant-appellant Cassandra S. Thaler appeals her conviction and sentence for one count of failing to control her dog, in violation of R.C.G.O. § 91.50(A)(5).
 {¶ 2} On July 16, 2007, Thaler was charged by complaint with one count of failing to control her dog. Thaler was arraigned on July 24, 2007, and pled not guilty to the charge against *Page 2 
her.
 {¶ 3} Following a bench trial on August 27, 2007, the court took the case under advisement. On October 24, 2007, the trial court issued a written decision finding Thaler guilty of failing to control her dog, in violation of R.C.G.O. § 91.50(A)(5). On December 19, 2007, Thaler was sentenced to one year of supervised probation including a prohibition of owning a dog. In addition, Thaler was ordered to pay a $100.00 fine as well as court costs. Thaler filed a timely notice of appeal with this Court on January 3, 2008.
 I {¶ 4} The incident which forms the basis for Thaler's arrest and subsequent conviction occurred on the afternoon of May 30, 2007, when Kaitlyn Hinman arrived at Thaler's home to play with Thaler's son, Davion. At the time of the incident, Thaler resided at 30 Monmouth Street in Dayton, Ohio, with her three children and her fiancee, David Sullivan. Thaler's home was one-half of a duplex house. The house was surrounded by a fence which not only separated one side of the duplex from the other side, but also separated the front yard of Thaler's residence from the back yard. Thaler also owned a dog named Bandit which she kept in the back yard on a chain attached to a fence post.
 {¶ 5} When Hinman, who was eight years old at the time of the incident, arrived at Thaler's residence, she testified that she knocked on the front door. Hinman testified that Thaler's fiancee, Sullivan, came to the door and told her to go around to the back of the house where Davion would meet her.
 {¶ 6} Sullivan, however, testified that Davion answered the door when Hinman knocked. Sullivan asserted that Davion came upstairs to where he and Thaler were watching a *Page 3 
movie and asked permission to go outside and play with Hinman. After giving Davion permission to play, Sullivan testified that he yelled to Davion to use the back door, rather than the front door, to exit the house. Sullivan testified that he believed that Hinman must have thought that he was telling her, rather than Davion, to go around to the back of the house when he yelled from the bedroom.
 {¶ 7} Hinman walked around to the back of Thaler's house where she encountered Bandit who was chained to a fence post in the back yard. Hinman testified that although Bandit was chained up, the gate was open. Moreover, the chain to which Bandit was attached was long enough for the dog move beyond the gate. Bandit growled as Hinman approached the back yard and bit her on the face and on the stomach.
 {¶ 8} After being told that Hinman had been bitten by Bandit, Thaler and Sullivan took Hinman into their home and attempted to clean her wounds. Thaler and Sullivan then took Hinman to her mother's house. Hinman's mother took her daughter to Children's Medical Hospital where Hinman was treated for the dog bites she suffered.
 {¶ 9} As the owner of Bandit, Thaler was subsequently charged with failure to control her dog and allowing it to bite Hinman, in violation of R.C.G.O. § 91.50(A)(5). After a bench trial, the court issued a written decision in which it found Thaler guilty of the charged offense. Additionally, the trial court held that R.C.G.O. § 91.50 is a strict liability offense, thus requiring no element of culpability.
 {¶ 10} It is from this judgment that Thaler now appeals.
 II {¶ 11} Thaler's first assignment of error is as follows: *Page 4 
 {¶ 12} "THE JUDGMENT OF CONVICTION AGAINST THE DEFENDANT-APPELLANT SHOULD BE REVERSED BECAUSE IT IS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."
 {¶ 13} In her first assignment, Thaler contends that there was insufficient evidence to find her guilty of violating R.C.G.O. § 91.50(A)(5). Specifically, Thaler argues that there was no evidence to suggest, pursuant to the language in R.C.G.O. § 91.50(A)(5), that she "suffer[ed] or permitt[ed]" her dog to bite Hinman. Thus, Thaler asserts that the trial court erred when it overruled her Criminal Rule 29 motion for acquittal made at the close of the State's case-in-chief.
 {¶ 14} Crim. R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim. R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." State v.Witcher, Lucas App. No. L-06-1039, 2007-Ohio-3960. "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted)."State v. Crowley, Clark App. No. 2007 CA 99, 2008-Ohio-4636.
 {¶ 15} As Thaler correctly notes, to prove a violation of R.C.G.O. § 91.50(A)(5), the State was required to prove the following elements beyond reasonable doubt:
 {¶ 16} "(A) No person owning, keeping, possessing, harboring, maintaining, or having the care, custody, control of a dog shall suffer or permit such dog to: *Page 5 
 {¶ 17} "(5) Bite, or otherwise cause physical harm to any other person, domestic animal, or feline."
 {¶ 18} In the instant case, the trial court did not err when it overruled Thaler's Crim. R. 29 motion for acquittal because the State presented sufficient evidence which, if reviewed in a light most favorable to the prosecution, established that Thaler violated R.C.G.O. § 91.50(A)(5). In particular, Kaitlyn Hinman testified that she visited Thaler's residence in order to play with Davion, Thaler's son. Hinman further testified that she was told by David Sullivan, Thaler's fiancee, to go around to the back of the house where Davion would meet her. Clearly, Hinman had permission to be on Thaler's property and was not trespassing.
 {¶ 19} Upon approaching the back yard, Hinman came upon Thaler's dog, Bandit, who was chained to a fence inside the back yard. Hinman testified that the gate was open when she approached, and Bandit, whose chain was long enough to reach outside the gate to the back fence, ran out and bit Hinman repeatedly. Based on the evidence adduced at trial, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. By failing to close the gate which restricted Bandit solely to the interior of the fenced-in portion of the back yard, Thaler, as the owner of the dog, allowed Hinman to be bitten when the child went to the rear of the house at the direction of Thaler's fiancee and was subsequently attacked by the dog.
 III {¶ 20} Thaler's second assignment of error is as follows:
 {¶ 21} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT HELD R.C.G.O. 91.50(A)(5) TO BE A STRICT LIABILITY *Page 6 
OFFENSE."
 {¶ 22} In her second assignment, Thaler contends that the trial court erred when it held that R.C.G.O. § 91.50(A)(5) was a strict liability offense and that the State proved the offense beyond a reasonable doubt. Thaler argues that R.C.G.O. § 91.50 does not explicitly provide for a requisite degree of culpability in the language of the ordinance, nor does it plainly indicate a purpose to impose strict liability. Under these circumstances, Thaler argues that "recklessness" is the required default mental state for a violation of R.C.G.O. § 91.50(A)(5). Thus, the trial court utilized the incorrect mental state when it found Thaler guilty of violating R.C.G.O. § 91.50(A)(5) and that the ordinance was a strict liability offense.
 {¶ 23} In support of her argument, Thaler cites to State v.Collins, 89 Ohio St.3d 524, 733 N.E.2d 1118, 2000-Ohio-231, in which the Court noted that the General Assembly has set forth, in R.C. § 2901.21(B), the test for determining whether an offense is a strict liability offense. R.C. § 2901.21(B) states in pertinent part:
 {¶ 24} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense.When the section neither specifies culpability nor plainly indicates apurpose to impose strict liability, recklessness is sufficientculpability to commit the offense."(emphasis added).
 {¶ 25} "* * * [I]t is not enough that the General Assembly in fact intended imposition of liability without proof of mental culpability. Rather the General Assembly must plainly indicate that intention in the language of the statute." State v. Collins, 89 Ohio St.3d at 530,733 N.E.2d 1118. Thus, a finding that a criminal statute or ordinance is a strict liability offense must be *Page 7 
based upon a finding that the language contained in the statute or ordinance plainly indicates that intention.
 {¶ 26} Thaler also relies on our recent holding in State v.Becker, Montgomery App. No. 22107, 2008-Ohio-2074, in which we held that because R.C.G.O. § 93.05 did not specify any degree of culpability, "they likewise do not contain language plainly indicating an intent to make the offense one of strict liability. Therefore, we conclude that under State v. Collins, supra, the offense with which Becker is charged is not a strict liability offense."
 {¶ 27} Thaler argues that R.C.G.O. § 91.50 is similar to R.C.G.O. § 93.05 insofar as neither section specifies any degree of culpability nor does either section contain language plainly indicating an intent to make the offense one of strict liability. In light of these similarities, Thaler contends that "recklessness" is the required default mental state for a violation of R.C.G.O. § 91.50(A)(5) in the absence of any language plainly stating an intent to create a strict liability offense.
 {¶ 28} In City of Dayton v. Dye (October 30, 1986), Montgomery App. No. 9539, however, we held that R.C.G.O. § 91.50 is a strict liability offense based on specific language contained in the ordinance. InDye, we stated the following:
 {¶ 29} "[T]he clearest expression of the municipal legislator's intent to impose strict liability on person[s] owning `vicious' dogs can be gleaned from R.C.G.O. 91.50(C). This provision sets forth several defenses to the section and specifically provides that `[l]ack of intent or knowledge is not a defense to a violation of this section.' R.C.G.O. 91.50(C)(4). Thus, R.C.G.O. 91.50 plainly indicates that culpability is not required for a person to be guilty of the offense." *Page 8 
 {¶ 30} R.C.G.O. § 91.50(B), which was at issue in Dye, pertains to the harboring of vicious dogs. On the other hand, R.C.G.O. § 91.50(A)(5) makes it a criminal offense to suffer or permit one's dog to bite another individual or domestic animal. Both R.C.G.O. § 91.50(A)(5) and (B), however, are subject to section (D)(4) of the ordinance which clearly states "lack of intent or knowledge is not a defense to a violation of this section." Thaler argues that the holding inDye was superseded by the holding of the Ohio Supreme Court inCollins. Although our opinion in Dye was issued approximately fourteen years before the Supreme Court's opinion in Collins, both cases articulate the same legal principle, namely that to hold that a criminal statute or ordinance is a strict liability offense, a court must find that the language contained in the statute or ordinance plainly indicates that intention. In Dye, we interpreted the language in R.C.G.O. § 91.50 to plainly indicate a purpose to impose strict liability for a violation of the ordinance. Our decision in Dye fully comports with the holding of the Supreme Court in Collins. Thus, we agree with the trial court and find that R.C.G.O. § 91.50 is a strict liability offense.
 {¶ 31} In the instant case, Thaler stipulated that Bandit was her dog. It is further undisputed that Bandit bit Hinman while she was lawfully on Thaler's property. Under these circumstances, the essential elements of R.C.G.O. § 91.50 have been met, and Thaler was not prejudiced by the trial court's holding that the statute in question imposes strict liability.
 {¶ 32} Thaler's second assignment of error is overruled.
 IV {¶ 33} Thaler's third and final assignment of error is as follows:
 {¶ 34} "THE JUDGMENT OF CONVICTION AGAINST THE DEFENDANT *Page 9 
APPELLANT IS VOID AND SHOULD BE VACATED ON THE GROUND THAT THE COMPLAINT WAS DEFICIENT AS A MATTER OF LAW AND THE DEFENDANT-APPELLANT NEVER RECEIVED NOTICE OF ALL ESSENTIAL ELEMENTS THAT THE PROSECUTION MUST PROVE CONTRARY TO THE GUARANTEES OF DUE PROCESS OF LAW."
 {¶ 35} In light of our disposition with respect to Thaler's second assignment of error, we need not reach the merits of the argument advanced in her third assignment. Because R.C.G.O. § 91.50 is a strict liability offense, the complaint charging Thaler with failure to control her dog was not deficient. Thus, she was not deprived of notice regarding any of the essential elements that the State had the burden of proving beyond a reasonable doubt.
 {¶ 36} Thaler's third and final assignment of error is overruled.
 V {¶ 37} All of Thaler's assignments of error having been overruled, the judgment of the trial court is affirmed.
WOLFF, P.J., and BROGAN, J., concur.
Copies mailed to:
Amy B. Musto
Adelina E. Hamilton
 Hon. Dennis J. Greaney *Page 1