OPINION
{¶ 1} Defendant-Appellant Wayne Lundberg appeals from his conviction and sentence for disorderly conduct. For the following reasons, we will affirm his conviction, but remand his case to the trial court for re-sentencing. *Page 2 
 I {¶ 2} Very early in the morning on December 14, 2007, Lundberg arrived at the home he shared with his wife, Rebecca Lundberg, and the couple's children. As Lundberg raged around the home, loudly demanding to know how she had spent her weekend and who she had been with, he noticed a statue missing. Lundberg insisted that Rebecca call the police to report the theft.
 {¶ 3} When the officers arrived, they separated the couple, who were still arguing. Lundberg was very upset and yelling loudly. He wanted the officers to take a theft report regarding the statue. The officers told Lundberg that there could not be a theft of shared property. Lundberg argued with them, and they repeatedly asked him to quiet down and reminded him that the couple's children were asleep upstairs and that they had to get up for school later that morning. Lundberg continued to yell. After several warnings, the officers placed Lundberg under arrest for disorderly conduct.
 {¶ 4} Lundberg's case was tried to the court. The trial court found him guilty and sentenced him to thirty days in jail and a $250 fine. Lundberg's sentence has been stayed by the trial court pending the outcome of this appeal.
 II {¶ 5} Lundberg's first three assignments of error will be considered together as one.
 {¶ 6} Lundberg's First Assignment of Error:
 {¶ 7} "The trial court erred in overruling Appellant's Rule 29 motion for acquittal made at the conclusion of the State's case because the evidence was insufficient to sustain a conviction for the offense charged." *Page 3 
 {¶ 8} Lundberg's Second Assignment of Error:
 {¶ 9} "The trial court erred in finding Appellant guilty at the conclusion of the trial because the State failed to prove Appellant guilty beyond a reasonable doubt."
 {¶ 10} Lundberg's third assignment of error:
 {¶ 11} "The trial court erred in finding Appellant guilty at the conclusion of the trial because the conduct of Appellant did not, and does not, constitute the crime of disorderly conduct."
 {¶ 12} In his first three assignments of error, Lundberg argues that his conviction is against the manifest weight of the evidence and that because it is not supported by sufficient evidence, the trial court erred in denying his Crim. R. 29 motion for acquittal. We disagree.
 {¶ 13} When reviewing the denial of a Crim. R. 29 motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. State v. Thaler, Montgomery App. No. 22578,2008-Ohio-5525, ¶ 14, citation omitted. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." State v. Wilson, Montgomery App. No. 22581, 2009-Ohio-525, ¶ 10, citing State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could *Page 4 
not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 14} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."Wilson, supra, at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Id. at 175.
 {¶ 15} Lundberg was convicted of disorderly conduct, in violation of R.C. 2917.11(A)(1), which states in pertinent part: "No person shall recklessly cause inconvenience, annoyance or alarm to another by. . . [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior." Disorderly conduct is a minor misdemeanor offense, but because Lundberg "persist[ed] in disorderly conduct after reasonable warning or request to desist," he was found guilty of a misdemeanor of the fourth degree. R.C. 2917.11(E)(3)(a).
 {¶ 16} The evidence shows that at Lundberg's request, his wife summoned police to their home. When the officers arrived, Lundberg was very upset and was yelling loudly at his wife. Lundberg continued to yell at his wife, and he screamed at the responding officers, despite repeated warnings to stop. Thus, by his turbulent behavior, Lundberg recklessly caused *Page 5 
inconvenience, annoyance or alarm to his wife and to the officers, See, e.g., State v. McClellan (Feb. 23, 1998), Stark App. No. 1997 CA 00213, and he persisted in this behavior after reasonable warnings to stop. This evidence was sufficient to sustain a conviction for disorderly conduct.
 {¶ 17} In a factually similar case, State v. Grills (June 8, 1994), Greene App. No. 92 CA 92, we upheld a conviction for disorderly conduct based upon a defendant's loud yelling in a residential neighborhood, despite repeated warnings from the police to stop. Despite his argument to the contrary, the fact that Lundberg's turbulent behavior occurred inside his home does not somehow immunize his actions or negate his guilt.
 {¶ 18} Lundberg's conviction was supported by sufficient evidence, and it was not against the manifest weight of the evidence. Accordingly, Lundberg's first three assignments of error are overruled.
 III {¶ 19} Lundberg's fourth assignment of error:
 {¶ 20} "The trial court erred in sentencing Appellant to thirty days in jail because the record does not indicate that the court took into consideration the factors set forth in R.C. 2929.22 in imposing sentence on Appellant. Thus, the maximum sentence of thirty days in jail is an abuse of discretion."
 {¶ 21} In his fourth assignment of error, Lundberg claims that the trial court abused its discretion in imposing a maximum sentence upon him without clearly indicating its consideration of the factors set forth in R.C. 2929.22. While it is preferable that the trial court state on the record that it has considered the statutory criteria, the statute does not require the *Page 6 
court to do so. State v. Nelson, 172 Ohio App.3d 419, 2007-Ohio-3459, ¶ 14, citation omitted. Instead, absent an affirmative showing to the contrary, an appellate court will presume that the trial court did consider the statutory factors. Id. Lundberg failed to affirmatively demonstrate that the trial court failed to consider the necessary factors.
 {¶ 22} Nevertheless, it is plain error not to afford a defendant his right to allocution afforded by the constitution and the criminal rules.City of Middleburg v. Sefcik, Cuyahoga App. No. 85370, 2005-Ohio-4575, ¶ 7. "Plain errors are those which are of such a nature as to deprive the defendant of a fair trial and cause a miscarriage of justice."State v. Stevenson, Greene App. No. 07CA51, 2009-Ohio-901, ¶ 5, citingState v. Williams, 79 Ohio St.3d 1, 12, 1997-Ohio-407. Criminal Rule 32(A)(1) provides that before sentence is imposed, the trial court "shall address the defendant personally" and ask if he wishes to make a statement on his own behalf or present any information in mitigation of his punishment. Here, sentencing immediately followed the court's finding of guilt. The sentencing portion of the proceedings went as follows:
 {¶ 23} "Court: Having heard the testimony of the two witnesses who appeared this morning and testified, the Court finds that the Prosecution has sustained its burden beyond a reasonable doubt, that on or about December 14, 2007 one Wayne Lundberg did recklessly cause inconvenience, annoyance or alarm to others by engaging in violent or turbulent behavior which persisted after warning or request to desist. We'll make a finding of guilty. Mr. Little?
 {¶ 24} "Little: I have nothing to say your honor.
 {¶ 25} "Court: We'll impose a $250.00 fine and a 30-day jail sentence."
 {¶ 26} Although the court afforded defense counsel, Mr. Little, an opportunity to speak, *Page 7 
no such opportunity was offered to the defendant. "The trial court's failure to provide defendant with an opportunity to personally address the court and make a statement on his own behalf before sentence was imposed constitutes reversible error because Crim. R. 32(A)(1) imposes an affirmative duty upon the trial court to speak directly to a defendant on the record and inquire whether he or she wishes to exercise or waive the right of allocution." Nelson, supra, at ¶ 9, citations omitted.
 {¶ 27} "In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim. R. 32(A), resentencing is required unless the error is invited error or harmless error." State v.Campbell, 90 Ohio St.3d 320, 2000-Ohio-183. The doctrine of waiver is inapplicable to this type of error if the trial court does not ask the defendant if he wishes to allocute. Id. at 324-325. The error is harmless if the defendant had made an unsworn statement to the jury, sent a letter to the judge, and defense counsel had made a statement to the judge on the defendant's behalf. State v. Reynolds,80 Ohio St.3d 670, 687, 1998-Ohio-171. There was no waiver or harmless error in this case.
 {¶ 28} Since the verdict has been affirmed, the appellant may view this remand as, at best, a pyrrhic victory — a meaningless exercise where, after appearing before the same judge, he will receive the same sentence. Perhaps, or perhaps not.
 {¶ 29} At the resentencing, the defendant will have the opportunity to say something that could lessen his sentence (i.e., mitigation) and to verbalize how the sentence should be tailored to fit him and his offense (i.e. humanization). Thomas, Beyond Mitigation: Towards a Theory of Allocution (2007), 75 Fordham L.Rev. 2641. *Page 8 
 {¶ 30} The right is hardly new. The concept of allocution has its origins in English common law; it dates back to the 17th
century, when punishment for most felony convictions was death, and criminal defendants had neither the right to counsel nor the right to testify on their own behalf. Marshall, Lights, Camera, Allocution:Contemporary Relevance or Director's Dream? (1987), 62 Tul. L.Rev. 207, 209. In its earliest form, the purpose of the trial court's allocution was to allow a convicted defendant facing execution to assert that the sentence should not be carried out, but only for these limited grounds: the defendant was insane, was pregnant, had been misidentified, had been pardoned by the Crown, or was entitled to the "benefit of the clergy." (Thomas, supra, 75 Fordham L.Rev. at p. 2646).
 {¶ 31} But by the 19th century, when criminal defendants could testify and be represented by counsel, the purpose of allocution had been broadened, both in England and in the United States, to allow a criminal defendant to make a personal statement in mitigation of punishment. In 1847, a leading British criminal law treatise explained: "It is now indispensably necessary, even in clergyable felonies (crimes for which the trial court has the discretion not to sentence the defendant to death. 1 Chitty, A Practical Treatise on The Criminal Law, 5th Am. ed. 1847, pp. 671-674), that the defendant should be asked by the clerk if he has anything to say why judgment of death should not be pronounced on him; and it is material that this appear upon record to have been done. . . . On this occasion, he may allege any ground in arrest of judgment; or may plead a pardon, if he has obtained one. . . . If he has nothing to urge in bar, he frequently addresses the court in mitigation of his conduct, and desires their intercession with the king, or casts himself upon their mercy." (1 Chitty, supra, p. 699, fns. omitted.)
 {¶ 32} Although Chitty's treatise mentions only defendants facing a sentence of death, a *Page 9 
prominent American criminal law treatise published several years later in 1866, quoting from the very passage by Chitty mentioned in the preceding paragraph, points to "the formalities which are gone through with at the passing of sentence" in general, making no distinction between defendants facing a sentence of death and those subject only to lesser punishments. (1 Bishop, Commentaries on the Law of Criminal Procedure (1866) § 865). And an earlier American treatise explicitly states that a defendant in a noncapital case is permitted to ask for a lesser sentence: "In capital cases . . . the clerk . . . asks the prisoner-'. . . have you anything to say why sentence of death should not be passed . . . against you;' upon which the prisoner may move in arrest of judgment . . . or he may address any other observations to the judge which he may think proper. In other [noncapital] cases, when sentence is about to be passed, the defendant may address the court in mitigation of punishment, as well as in arrest of judgment, whether he was tried and convicted or pleaded guilty." (1 Waterman's Archbold, Practice, Pleading and Evidence in Criminal Cases (1853) p. 180-1).People v. Evans (2008), 44 Cal. 4th 590, 187 P.3d (1014-1015).
 {¶ 33} "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. See Anonymous, 3 Mod. 265, 266, 87 Eng.Rep. 175 (K.B.). Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century-the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But there is no reason why a procedural rule *Page 10 
should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself. * * * We therefore reject . . . [any] contention that merely affording defendant's counsel the opportunity to speak fulfills the dual role of Rule 32(a)." Green v.United States (1961), 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670
(Frankfurter, J.).
 {¶ 34} Accordingly, we must reverse Lundberg's sentence and remand the case to the trial court for re-sentencing. Albeit for a different reason than the ones Lundberg argued, his fourth assignment of error is sustained.
 IV {¶ 35} Lundberg's conviction will be affirmed and the case will be remanded to the trial court for re-sentencing.
DONOVAN, P.J. and WOLFF, J., concur.
(Hon. William H. Wolff, Jr., retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
James F. Long, Don A. Little, Hon. Robert L. Moore. *Page 1