[Cite as *State v. Dawson*, 2012-Ohio-627.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.  24558 |
| v. | : | T.C. NO.  09CR1755 |
| JEREMY J. DAWSON | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____17th____ day of ____February____, 2012.

. . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 0067685, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 131 N. Ludlow Street, Suite 630, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Jeremy J. Dawson appeals from his conviction on two counts of felony non-support of dependents, in violation of R.C. 2919.21(B).  For the following reasons, his conviction will be affirmed.

**{¶ 2}** In August 2010, Dawson was indicted on two counts of felony non-support of dependents. The first count alleged that Dawson had failed to comply with a court order to support his daughter, K.D., for the period from April 1, 2005 to March 31, 2007. The second count alleged that he failed to pay ordered child support for the period of April 1, 2007 to March 31, 2009.

**{¶ 3}** The case was tried to a jury. At the conclusion of the State's case, Dawson moved under Civ.R. 29(A) for a judgment of acquittal on Count II. The court denied the motion. Dawson then offered several witnesses on his behalf and raised the affirmative defense that he had provided the support that was within his ability and means. After deliberations, the jury found Dawson guilty of both counts. The trial court sentenced him to community control.

**{¶ 4}** Dawson appeals from his convictions, raising two assignments of error.

I.

**{¶ 5}** Dawson's first assignment of error states:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29

MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE.

**{¶ 6}** When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. *State v. Thaler,* 2d Dist. Montgomery No. 22578, 2008-Ohio-5525, ¶ 14. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of

law." *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560 (1979). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 7} R.C. 2919.21(B) provides: "No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support." The offense is a fifth degree felony when the offender has failed to provide support for a total accumulated period of 26 weeks (consecutive or non-consecutive) out of 104 consecutive weeks.

{¶ 8} According to the State's evidence, in March 2003, the Montgomery County Child Support Enforcement Agency ("CSEA") issued an administrative order requiring Dawson to pay $271.83 per month as child support for his daughter; over a two-year or 104-week period, this amounted to $6,523.92. In March 2005, that order was adopted by the Montgomery County Juvenile Court. The juvenile court's judgment noted that Dawson was presently unemployed, and he was ordered to seek work.

{¶ 9} From April 1, 2005 to March 31, 2007 (the period addressed by Count I), Dawson paid a total of $1,369.42 in child support. According to Bonnie Henderson of

CSEA, this total constituted 22 weeks of payments, leaving 82 weeks unpaid for that 104-week period.   Dawson's accrued arrearage during those 104 weeks was $5,154.50.

{¶ 10} Henderson further testified that for the period of April 1, 2007 to March 31, 2009 (the period addressed by Count II), Dawson made monthly payments of $307.14 in April through June and August through November 2007.   Dawson paid $454.15 in July and December 2007.   In January and February 2008, he paid $307.18.   CSEA did not receive any additional "voluntary" payments from Dawson in 2008 or the beginning of 2009.   In March 2009, CSEA received $140.91.   These payments totaled $3,813.53.

{¶ 11} In May 2008, CSEA intercepted an income tax refund in the amount of $4,692, and in August 2008, CSEA intercepted another income tax distribution of $600.[1] CSEA applied these funds to Dawson's child support arrearage for prior periods of time.   At trial, the State did not include these "involuntary" payments in its calculations of Dawson's compliance with his support obligation.   According to Henderson, Dawson's payments of $3,813.53 constituted 61 weeks of payments, leaving 43 weeks unpaid for the period of April 2007 to March 2009.

{¶ 12} CSEA's account detail report, which was admitted as State's Exhibit 4, indicated that CSEA received a total of $9,105.53 in support payments (including the tax seizures) during the 104-week period ending March 31, 2009, resulting in an overpayment

---

[1] At trial, counsel assumed that one interception was Dawson's federal income tax refund and the other was his state income tax refund.    It is possible that the $600 income tax seizure was Dawson's economic stimulus payment under the federal Economic Stimulus Act of 2008; those payments were subject to seizure for overdue child support obligations. The parties stipulated that "the sum of $5,292 was received as a result of an income tax seizure," but there was no testimony identifying the sources — federal or state — of the funds.

of $2,581.61 when compared with Dawson's support obligation for that two-year period. The report further specified, however, that $3,131.04 was applied to Dawson's monthly support obligation while $5,974.49 – consisting of the income tax seizures and portions of Dawson's payments – was applied to his arrearage. An additional $13.06 was also received and applied to fees.

{¶ 13} Dawson claims that the State did not present sufficient evidence that he failed to pay court-ordered child support for 26 weeks out of the 104 weeks ending March 31, 2009. He asserts that the $5,292 in income tax seizures should have counted toward the amount of child support payments that he paid during that period. He further asserts that the overpayment for that period should have been applied to the 104-week period ending March 31, 2007.

{¶ 14} According to the State's evidence, the administrative child support order, entered in March 2003, required Dawson to pay $271.83 per month for current support, plus a two percent processing charge. All child support was to be withheld or deducted from Dawson's income or assets through a withholding or deduction notice. (At the time, Dawson was employed by Simco Refrigeration, Inc.) As stated above, the trial court adopted the administrative order in 2005.

{¶ 15} R.C. 2919.21(B) prohibits an obligor from failing "to provide support as established by a court order." In Dawson's case, the court order establishes a monthly support obligation of $271.83 and, thus, the statute is directed to Dawson's alleged failure to make the required monthly child support payments. In other words, whether Dawson violated R.C. 2919.21(B) depends on whether he complied with the terms of his support

order. We agree with the State that payments toward Dawson's arrearage would not constitute timely monthly support payments as required by the court order. Rather, payments toward an arrearage simply reduce the amount owed due to the obligor's failure to comply with a court order.

{¶ 16} The State presented evidence that the income tax seizures were applied toward his arrearage, not toward his on-going court-ordered monthly child support payments. The federal statute governing the collection of past-due child support from a federal tax refund supports the State's position that Dawson's federal income tax refund should not have been used in the CSEA's calculation of Dawson's compliance with his monthly child support obligation. Under the federal statute, 42 U.S.C. 664, a State agency may notify the Secretary of the Treasury that an individual "owes past-due support," after which the Secretary of the Treasury must withhold any refund payable to that person and pay that amount to the State agency. "Past-due support" is defined as "the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child ***." 42 U.S.C. 664(c). Thus, under the federal statute, the refund is directed to the State agency for payment toward the obligor's arrearage, not the monthly support obligation.

{¶ 17} R.C. 5747.121 also permits the interception of Ohio income tax refunds for "the collection of *overdue* child support from refunds of paid state income taxes *** that are payable to obligors." (Emphasis added.) R.C. 5747.121(A). Based on this language, R.C. 5747.121 also appears to direct that intercepted Ohio income tax refunds be applied to child support arrearages. Accordingly, CSEA correctly subtracted the income tax

seizures from its calculation of Dawson's required monthly support payments for the 104-week period ending March 31, 2009.

{¶ 18} Based on the evidence at trial, the State presented sufficient evidence that Dawson failed to pay support as established by a court order for 26 weeks out of the 104-week period ending March 31, 2009. Henderson and Jim Codispoti, former investigator for the prosecutor's office, testified that the income tax seizures were applied to Dawson's arrearage, not to his current support obligations, and that Dawson's other payments constituted the equivalent of 61 weeks of payment for the 104-week period ending March 31, 2009.[2] The account detail provided by CSEA indicated that Dawson failed to pay any monthly child support from March 2008 to February 2009 (not including the two income tax seizures), which amounted to well over 26 weeks of missed payments. This evidence, if believed, was sufficient to prove that Dawson committed non-support of dependents, a fifth degree felony, between April 1, 2007 and March 31, 2009.

{¶ 19} The first assignment of error is overruled.

II.

{¶ 20} Dawson's second assignment of error states:

THERE WAS SUFFICIENT CREDIBLE EVIDENCE TO ESTABLISH

THE AFFIRMATIVE DEFENSE SET FORTH IN O.R.C. 2919[.21](D) BY

---

[2] Under different facts, CSEA's formula of calculating the number of weeks of payment by dividing the total payments for the 104-week period by the amount of the weekly payment may be problematic. For example, that formula would not distinguish an obligor who pays in accordance with the court order from an obligor who pays the equivalent of 104 weeks of child support on the 104th week. However, this issue was not raised by Dawson and, given the facts before us, it has no bearing of the sufficiency of the State's evidence.

A PREPONDERANCE OF THE EVIDENCE.

**{¶ 21}** Dawson contends, in essence, that his conviction for non-support of defendants is against the manifest weight of the evidence because he established, by a preponderance of the evidence, the affirmative defense provided for in R.C. 2919.21(D). That statute reads:

> It is an affirmative defense to * * * a charge of failure to provide support established by a court order under division (B) of this section that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means.

The defendant bears the burden to prove an affirmative defense by a preponderance of the evidence.   R.C. 2901.05(A).

**{¶ 22}** "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."   *Wilson*, 2009-Ohio-525, at ¶ 12.   When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."   *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 23}** Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of

particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.*

**{¶ 24}** The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin,* 20 Ohio App.3d at 175.

**{¶ 25}** Dawson's mother, step-father, and close friend testified on Dawson's behalf at trial. Dale and Terina Turner, Dawson's mother and step-father, testified that Dawson resided with them during the period of April 1, 2005 to March 31, 2009, with the exception of approximately eight months in 2008 and 2009, when Dawson lived across the street from them with his girlfriend. Dawson moved back in with his parents after he was evicted. Dawson's stepfather testified that Dawson was not required to pay rent or utilities at their house, and he ate dinner with them. Dawson did not spend money on clothes for himself; he smoked cigarettes, and his parents did not give him money for them. When Dawson was working, he would occasionally buy clothes for his daughter. Dawson had a 2002 Grand Am, but he was unable to afford the payments; it now belongs to his mother. It was undisputed that Dawson's daughter stays at her paternal grandparents' home each weekend and that she has a loving relationship with her grandparents and Dawson.

**{¶ 26}** Dawson's step-father and his friend, Curtis Thaxton, indicated that Dawson worked "on and off" during that four-year period, including employment at Jiffy Lube, a demolition company, and Soft Touch car wash. Dawson's step-father testified that,

when Dawson was not working, he was looking for a job. There were several jobs that Dawson could not accept because his driver's license was suspended in 2005. Dale Turner estimated that Dawson applied for 20 or 30 jobs that did not require a driver's license. Dawson's mother and Thaxton also tried to help Dawson find a job. Terina Turner further indicated that individuals from Hope Lutheran Church in his neighborhood have worked with Dawson to help him get a job.

{¶ 27} Thaxton and Terina Turner both testified that Dawson has been diagnosed with ADHD. Thaxton indicated, however, that Dawson has held a job. Terina Turner testified that Dawson has difficulty reading and understanding what he reads; this causes Dawson difficulty in completing employment applications.

{¶ 28} At the conclusion of the trial, the jury was instructed on the affirmative defense, but it convicted Dawson of both counts of non-support of dependents.

{¶ 29} Upon review of the record, Dawson presented testimony from which the jury could have concluded that he provided the support that was within the accused's ability and means. Dawson's parents and friend indicated that Dawson has worked intermittently in low-paying jobs, has struggled to find work, and has limited means to support himself.

{¶ 30} However, the State's evidence, particularly the CSEA account detail reports, indicated that Dawson paid nothing toward child support in April 2005, June through December 2005, January 2006, April and May 2006, and August through December 2006 – 16 months out of the two-year period covered by Count I. As to Count II, Dawson failed to pay any monthly child support from March 2008 to February 2009 (not including

the two income tax seizures). During those time periods, Dawson purchased cigarettes and meals and, for an eight-month period in 2008 and 2009, he lived with his girlfriend across the street from his parents.

{¶ 31} Although the facts present a close case, we must defer to the jury's credibility determinations and, based on the record, we cannot conclude that the jury "clearly lost its way" when it rejected Dawson's affirmative defense and convicted him of non-support of dependents.

{¶ 32} The second assignment of error is overruled.

### III.

{¶ 33} The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Johnna M. Shia
Christopher A. Deal
Hon. Mary Katherine Huffman