[Cite as *State v. Weaver*, 2012-Ohio-4087.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                      :

    Plaintiff-Appellee                          :          C.A. CASE NO.    24925

v.                                                 :          T.C. NO.    11CRB4155

BRITTNEY WEAVER                                    :          (Criminal appeal from
                                                 Municipal Court)

    Defendant-Appellant                        :


                                                   :


. . . . . . . . . .

**O P I N I O N**

Rendered on the ____7th____ day of ____September____, 2012.

. . . . . . . . . .

EDWARD C. UTACHT II, Atty. Reg. No.0022225, Assistant City Prosecutor, City of Dayton, 335 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

THADDEUS HOFFMEISTER, Atty. Reg. No. 0081977, University of Dayton Law Clinic, 300 College Park, Dayton, Ohio 45469
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}**    Brittney N. Weaver was convicted of criminal damaging after a bench trial

in the Dayton Municipal Court. Weaver appeals from her conviction, claiming that the trial court erred in denying her Crim.R. 29 motion for a judgment of acquittal and that her conviction was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} The State's evidence at trial, when construed in the State's favor, revealed the following facts.

{¶ 3} During the afternoon of April 28, 2011, Bradley Rudy had a court hearing with Weaver, the mother of three of his children, concerning a restraining order. Bradley[1] and his wife, Amanda, drove to downtown Dayton in Rudy's 1996 Chevy Blazer and parked in the parking lot located on Second Street between Interstate 75 and Perry Street, across from the Montgomery County Jail. Weaver parked in the same parking lot.

{¶ 4} Bradley testified that his vehicle was parked facing Perry Street, such that the passenger side was facing toward the jail and courthouse. However, Amanda and Dayton Police Office Dyan Thomas stated that the vehicle was facing the opposite direction, toward Interstate 75, with the driver's side visible from the courthouse.

{¶ 5} After the court hearing, Weaver, along with her grandmother and a friend, left the courthouse first, and the Rudys followed shortly afterward. As Bradley approached the parking lot, he saw Weaver scratch the passenger side of his vehicle with her keys. Weaver yelled obscenities at Bradley, then left in her car. Amanda also saw Weaver next to the Rudys' Blazer with keys in her hand, but she did not see Weaver scratch the vehicle.

{¶ 6} When the Rudys checked the passenger side of the vehicle, they saw a large

---

[1] For sake of clarity, we will refer to the witnesses by their first names.

scratch on the rear passenger door; they also saw "white mucusy stuff" running down the driver's window. The Blazer did not have that scratch when the Rudys arrived at the parking lot. Bradley testified that he owned the vehicle and that he did not give Weaver permission to scratch the car. Amanda took photographs of the scratch and the substance on the window. The Rudys reported the damage to Officer Thomas.

{¶ 7} At the conclusion of the State's evidence, Weaver moved for a Crim.R. 29 judgment of acquittal. The trial court denied the motion.

{¶ 8} Weaver's grandmother, Constance Weaver, and Weaver herself then testified. Constance stated that, after the court hearing, she left with Weaver, the two walked directly to the parking lot, Weaver got into the driver's seat of their car, and the two left. Constance testified that the Rudys were coming down the courthouse steps across from the parking lot as she and Weaver were pulling out of the parking lot. Constance denied that Weaver had used a key to deface Bradley's vehicle; she explained that she had possession of Weaver's keys from the time they entered the courthouse until Weaver was seated in the driver's seat after the hearing. Constance also did not hear Weaver yell anything at the Rudys after the hearing.

{¶ 9} Weaver testified that Bradley's vehicle was parked facing Interstate 75 and that there were one or two cars between his vehicle and hers. Weaver denied being next to the passenger side of Bradley's Blazer, making any marks on his vehicle, and putting any substances on it.

{¶ 10} After considering the evidence, the trial court found Weaver guilty of criminal damaging. The court sentenced Weaver to 90 days in jail, all of which were

stayed, and she was placed on two years of non-reporting community control. Weaver was ordered to pay restitution and court costs.

{¶ 11} On appeal, Weaver claims that the trial court erred in denying her Crim.R. 29 motion and that her conviction was against the manifest weight of the evidence.

{¶ 12} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. *State v. Thaler,* 2d Dist. Montgomery No. 22578, 2008-Ohio-5525, ¶ 14. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 13} When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 14} In contrast to the sufficiency of the evidence standard, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all

reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15}   Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).   However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.*

{¶ 16}   The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 17}   In this case, Bradley testified that the Blazer was not scratched prior to the court hearing, that he saw Weaver scratch his vehicle with her keys after the court hearing, and that he did not give her permission to do so.   This testimony, if believed, was sufficient to support Weaver's conviction for criminal damaging.   The trial court did not err in denying her Crim.R. 29 motion for a judgment of acquittal.

{¶ 18}   Weaver argues that her conviction nonetheless was against the manifest weight of the evidence, because Bradley's testimony that he saw Weaver scratch the vehicle

was contrary to the testimony of all the other witnesses, who indicated that the passenger side of the vehicle was not visible from the Rudys' vantage point.

{¶ 19}   In finding Weaver guilty of criminal damaging, the trial court noted that "[t]he evidence is circumstantial as to the image of somebody near the vehicle but not actually seeing the person commit the damage."   We agree that, even if the trial court did not believe that Bradley actually saw Weaver "key" his vehicle, the court was presented with strong circumstantial evidence that Weaver damaged the Rudys' car with her keys.   The car was not damaged prior to the court hearing, and there was uncontroverted evidence that the rear passenger door was damaged when the Rudys returned to their vehicle after the hearing.  As they left the courthouse, Bradley and Amanda both saw Weaver standing next to the passenger side of their vehicle.   Amanda saw Weaver holding her (Weaver's) keys, which Amanda described as "a long key chain;" Constance had similarly testified that Weaver's keys were "on one of those long neck things."   Moreover, as noted by the trial court, there was also evidence of "some bad feelings between the parties," as demonstrated by testimony that the domestic relations court had ordered the parties to leave separately so that they would not have contact.   Viewing the evidence as a whole, Weaver's conviction for criminal damaging was not against the manifest weight of the evidence.

{¶ 20}   The assignments of error are overruled.

{¶ 21}   The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Edward C. Utacht II
Thaddeus Hoffmeister
Hon. John S. Pickrel