[Cite as *State v. Conkle*, 2012-Ohio-1772.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee                  :         C.A. CASE NO. 24161/24163

v.                                      :         T.C. NO.   09CRB2163
                                             09CRB1834

CHRISTINA L. CONKLE                     :
                                         (Criminal Appeal from
    Defendant-Appellant                 :    Municipal Court)

                                              :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the _____20th_____ day of _____April_____, 2012.

· · · · · · · · · ·

CHRISTINE L. BURK, Atty. Reg. No. 005059, 10 North First Street, Miamisburg, Ohio 45342
    Attorney for Plaintiff-Appellee

CHERYL L. COLLINS, Atty. Reg. No. 0085671, 124 West Main Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1} Christina Conkle appeals from a judgment of the Miamisburg Municipal Court, which found Conkle guilty of one count of aggravated menacing and one count of menacing.

**{¶ 2}** The victim of both offenses was Melinda Hill ("Hill"), who was in the process of divorcing Jason Hill ("Jason") when Jason became romantically involved with Conkle. The incidents occurred on August 7, 2009, and August 30, 2009. Conkle was charged with aggravated menacing related to a phone call on August 7, 2009, in Case No. 09CRB1834; she was charged with menacing related to a confrontation that occurred on August 30, 2009, in Case No. 09CRB2163.

**{¶ 3}** The bench trial began on March 10, 2010. When the State asked for a separation of witnesses, defense counsel indicated that he might call Jason, but "[i]t depends" on other evidence. The State objected, stating that the defense had not disclosed Jason as a possible witness, and noting that Jason had not been present at either incident. Defense counsel did not refute the State's claim that it had not disclosed any potential witnesses.

**{¶ 4}** On the first day of trial, the State presented the following evidence:

**{¶ 5}** Hill testified that, at approximately 11:05 a.m. on August 7, 2009, she was at work when she received a call on her cell phone from a "private" number. Hill stated that she recognized Conkle's voice[1] and that Conkle was the only person who had ever been listed as a private caller on Hill's phone in the past. According to Hill, Conkle asked "who I thought I was, * * * why did I think I deserved more money from my husband?" Conkle used other strong language and profanity as well. During the course of this phone call, Hill put the call on speaker phone, and several of her co-workers heard the exchange. Hill unsuccessfully attempted to file a police report on her lunch hour, but she did file a report that evening. She testified that she feared for her safety after this phone call.

---

[1] Hill knew Conkle only as Jason's new girlfriend, "Christina," at that time.

**{¶ 6}** Three of Hill's coworkers also testified at trial about listening on a speaker phone to part of the call Hill received around 11:00 a.m. on August 7. Although none of the coworkers could identify the caller, they stated that the caller was a female. They also testified that the caller had "yell[ed] * * * in a very irate manner," had threatened to "kick [Hill's] ass" and kill her, and had stated that she knew where Hill lived and worked. These threats were laced with profanity. Hill's coworkers testified that, after the call, Hill was "freaked out," scared, visibly shaking, and crying.

**{¶ 7}** One of Hill's coworkers testified that Hill had asked the caller's identity during the call; Hill explained[2] that she had hoped for Conkle to state her identity so that her co-workers could hear it.

**{¶ 8}** Hill further testified that, on August 30, 2009, she had been at home with her son, Chase, and her sister, Melissa Heaton; they were expecting Jason's sister to pick up Chase for a visit with Jason. Instead, Conkle arrived to pick up Chase. At that time, Hill did not know Conkle's last name or how to contact her; those factors, coupled with Conkle's previous threats, made Hill unwilling to allow Chase to leave with Conkle. According to Hill, when she told Conkle that Jason would have to make other arrangements, Conkle got out of her car and ran toward Hill, yelling and threatening to kill her. Hill ran into the house and locked the door. Conkle drove away a short time later, but Hill testified that she (Hill) was "in fear for [her] safety." Shortly thereafter, Hill obtained a civil protection order against Conkle.

**{¶ 9}** Heaton offered similar testimony about the incident on August 30, 2009.

---

[2]Hill was recalled after her coworkers testified.

She testified that Hill had been expecting Crystal Chapman, Jason's sister, to pick up Chase; when Conkle arrived instead, Hill told Conkle that Jason would need to have someone else pick up Chase. Conkle then ran toward Hill, threatened to kill her, and called her names. Heaton and Hill ran back into the house and called the police. Heaton testified that she, Hill, and Chase had been very afraid.

{¶ 10} When the State rested its case at the end of the first day of trial, the court stated that they were "almost out of time here today" and ordered the parties to return the following week to continue the trial. Conkle's attorney made a motion to dismiss both charges pursuant to Crim.R. 29; the trial court overruled the motion.

{¶ 11} When the parties returned to court on March 17, 2010, defense counsel indicated that he would like to call Jason as his first witness, but Jason was unavailable that day due to "economic hardship, financial hardship." The defense asked for a continuance. Conkle had not subpoenaed Jason and, as discussed above, the State had not been notified that he was a potential witness, other than by counsel's statement at the start of trial that he might call Jason. The State argued against a continuance, because Conkle had chosen not to subpoena Jason "to not cause financial hardship to Mr. Hill," and it argued that "a proffer is not appropriate" if a witness has not been subpoenaed. Conkle's motion for a continuance and motion to proffer were overruled. The court commented that Jason "was basically going to testify * * * to offer his opinion on the character of the victim."

{¶ 12} Conkle was the only witness for the defense. She testified that she met Hill through Jason and that Hill "drove by my house every day for a year." With respect to the encounter on August 30 at Hill's home, Conkle testified that Hill and Heaton had been

"waiting in the yard" when Conkle arrived, and that Chase had started to run toward Conkle's truck. Hill and Heaton then started laughing and screaming, and they threatened to call the police when Conkle got out of her truck. Conkle also testified that the women said someone else would have to pick up Chase. She admitted that the police were called to the house, and she crossed paths with a responding police officer near the end of Hill's street. Conkle believed that Jason had called Hill to inform her that Conkle would be the one picking up Chase that day.

{¶ 13} Conkle did not testify specifically about the phone call on August 7, but she denied having any interaction with Hill other than the incident on August 30 and a prior incident at a storage unit.

{¶ 14} On April 29, 2010, the trial court filed an entry finding Conkle guilty of aggravated menacing and menacing. Although there are entries in the record setting the case for a "Dispositional Hearing," there is no indication that such a hearing occurred.[3] In separate sentencing entries, the trial court sentenced Conkle to ninety days in jail on the aggravated menacing charge, with ninety days suspended, and fined her $500, with $475 suspended; on the menacing charge, the trial court sentenced Conkle to thirty days in jail, with thirty days suspended, and fined her $250, with $240 suspended.

{¶ 15} Conkle raises five assignments of error on appeal.

{¶ 16} Her first assignment of error states:

THE TRIAL COURT ERRED IN NOT PERMITTING APPELLANT TO

---

[3] Conkle's brief states that she was sentenced for these offenses at a plea hearing on an unrelated traffic offense, without having an opportunity to be heard. The record in this case contains no information about the traffic case, and we do not have a transcript of any of the proceedings therein.

QUESTION WITNESSES REGARDING THE ALLEGED VICTIM'S CREDIBILITY.

{¶ 17} Conkle contends that she should have been allowed to inquire about Hill's credibility, including her "repeat[ed] * * * efforts to hurt and cause distress to her husband," because "[c]ausing Ms. Conkle distress would also cause [Jason] distress."

{¶ 18} The trial court did allow Conkle to present some evidence about the acrimonious nature of the relationship between Hill and Jason, who were in the midst of a divorce, and between Hill and Conkle, Jason's new girlfriend. In addition to the testimony about the incidents underlying these charges, the witnesses testified about the first time Hill met Conkle, when Hill was getting some items out of a storage unit rented by Jason, pursuant to a court order. Both Hill and Conkle testified about name-calling between them on this occasion, although each had her own version of who was doing the name-calling. The court did not allow testimony about other specific conduct or alleged misbehavior by Hill toward Jason, or some evidence that Conkle characterized as relating to Hill's reputation for truthfulness.

{¶ 19} Evid.R. 608 states:

(A) Opinion and reputation evidence of character

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by

opinion or reputation evidence or otherwise.

(B) Specific instances of conduct

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶ 20} Evid. R. 616(A) states: "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

{¶ 21} "When questioning a witness for impeachment purposes, a party may refer to facts not in evidence so long as the method of impeachment is otherwise allowed and there is a reasonable basis to imply the existence of the impeaching fact. Extrinsic evidence of the impeaching fact is admissible if the evidence shows bias, sensory defect, or specifically contradicts the witness's testimony and is also admissible by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706." (Footnotes omitted.) *State v. Cody,* 8th Dist. Cuyahoga No. 77427, 2002-Ohio-7055, ¶ 12.

{¶ 22} At trial, Conkle attempted to introduce evidence of specific instances of

Hill's conduct, arguing, as she does on appeal, that Hill's "conduct in the divorce was relevant" to her "bias and motive" for pressing charges against Conkle. For example, Conkle attempted to elicit testimony from Hill about Hill's harassment of Jason's other girlfriends, and about threats Hill allegedly made toward Jason, and about a restraining order that Jason obtained against Hill that she had allegedly violated. Counsel also asked whether she had "gone to the West Carrollton police department to complain about her husband" several times. For the most part, these lines of inquiry did not relate to Hill's reputation for truthfulness, but to specific alleged instances of behavior or misconduct. The trial court sustained the State's objections, limiting the testimony to the dates of the two alleged offenses, saying "I assume it wasn't a great relationship because they are divorced. Let's go ahead."

{¶ 23} Some of this evidence was properly excluded under Evid.R. 608(B); for example, the question about whether Hill had broken her husband's windows showed a prior bad act and did not specifically relate to any bias on her part against Conkle. On the other hand, evidence of Hill's hostility toward Jason, threats to ruin him, and conflicts with other girlfriends was arguably relevant to her motive in pressing charges against Conkle. The trial court should not have excluded all of this evidence simply because it did not relate to the events of August 7 and 30, 2009.

{¶ 24} However, this case was tried to the bench and, as indicated by the trial court's comments, the court was well-aware of the contentious nature of Hill's relationship with Jason and her likely feeling of animosity toward a girlfriend (Conkle) who entered the picture. Although the trial court should have allowed defense counsel to more fully explore

some of Hill's conduct toward Jason, Conkle, and other girlfriends, insofar as it related to a possible motive to fabricate or exaggerate her testimony, we cannot conclude that the trial court's error affected the outcome of the case.

{¶ 25} Conkle also attempted to elicit testimony from Miami Township Police Officer James Neer about Hill's reputation for truthfulness. In theory, such evidence would have been permissible under Evid.R. 608(A). However, the State objected to this testimony on the basis that defense counsel had not "established knowledge of interaction with Melinda Hill;" in other words, Conkle had not established the officer's knowledge, if any, of Hill's reputation before inquiring about that reputation. The trial court sustained the State's objection. Defense counsel asked one follow-up question about whether Neer had ever talked with officers from another jurisdiction about Hill, and Neer answered affirmatively. However, counsel did not ask any additional questions about whether Neer knew Hill's reputation for truthfulness. We cannot conclude that the trial court erred in excluding Officer Neer's testimony about Hill's reputation when there was not a proper foundation for such testimony.

{¶ 26} We will address Conkle's attempt to introduce Jason's testimony about Hill's truthfulness under the second assignment of error.

{¶ 27} The first assignment of error is overruled.

{¶ 28} Conkle's second assignment of error states:

THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF JASON HILL EITHER BY ABUSING ITS DISCRETION IN NOT GRANTING A CONTINUANCE TO OBTAIN TESTIMONY OR IN

REFUSING TO PERMIT DEFENDANT TO OBTAIN THE TESTIMONY

AS A DISCOVERY SANCTION.

**{¶ 29}** Conkle claims that the trial court should have granted her request for a continuance so that Jason could testify and she could fully present her defense. She also claims that excluding Jason's testimony "seemingly as a discovery sanction" was improper.

**{¶ 30}** The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial judge, which will not be reversed absent an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). A trial court also acts within its broad discretion in imposing sanctions for discovery violations. *State v. Brown,* 2d Dist. Greene No. 10-CA-28, 2011-Ohio-2425, ¶ 20. An abuse of discretion requires a finding that the decision was unreasonable, arbitrary, or unconscionable. *State v. Anderson*, 2d Dist. Montgomery No. 24657, 2012-Ohio-957, ¶ 6.

**{¶ 31}** "In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's 'right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *State v. Pattson,* 2d Dist. Montgomery No. 23785, 2010-Ohio-5755, ¶ 19, quoting *Unger.* The trial court should consider such factors as: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) any other relevant factors, depending on the unique

facts of the case.   *Unger* at 67-68.

{¶ 32}    In this case, Conkle failed to disclose Jason as a potential witness and did not subpoena him for the day the defense was scheduled to present its case.  (Jason  was present the first day of trial.)   It appears that this decision not to subpoena Jason was based, at least in part, on Jason's assertion to defense counsel that appearing in court on March 17 would create a financial hardship to him.   The alleged scheduling conflict was not brought to the court's attention before the date on which the trial was to resume.   Moreover, based on defense counsel's representations to the court about the content of Jason's testimony – some of which were on the record and some of which were not – the court concluded that Jason "was basically going to testify to * * * his opinion of the character of the victim."   The court could have reasonably concluded that this testimony would not have been particularly helpful in light of the acknowledged acrimonious relationship between Hill and Jason. Under these circumstances, the trial court acted within its discretion in refusing to grant a continuance.

{¶ 33}   The second assignment of error is overruled.

{¶ 34}    The third assignment of error states:

THE TRIAL COURT ERRED IN NOT PERMITTING APPELLANT TO PROFFER THE TESTIMONY OF MR. HILL AFTER DENYING DEFENDANT'S MOTION TO CONTINUE THE SECOND DAY OF TRIAL.

{¶ 35}    Conkle contends that she was prejudiced by the trial court's refusal to allow her to proffer what the content of Jason's testimony would have been, because doing so

"denied her right to appellate review." The purpose of a proffer is to assist the reviewing court in determining whether the trial court's exclusion of evidence affected the defendant's substantial rights. *State v. Mullins*, 2d Dist. Montgomery No. 21277, 2007-Ohio-1051, at ¶ 36.

**{¶ 36}** Although the trial court stated that "[t]he Motion to proffer [was] overruled," the primary issue to which Jason's testimony would have been addressed is, in fact, clear from the record: he would have offered "his opinion on the character of the victim" (the court's words). Because Jason was not present at either of the events on which the charges were based, the trial court could have reasonably concluded that Jason's testimony "very briefly about one fact and that is as to the phone call made to Melinda * * *" (as characterized by defense counsel) would likely have been of limited value.

**{¶ 37}** The trial court should not have "denied" Conkle's motion to proffer. But we conclude that the substance of the testimony was sufficiently clear, and that Conkle was not prejudiced by the trial court's refusal to hear a more detailed account of Jason's testimony.

**{¶ 38}** The third assignment of error is overruled.

**{¶ 39}** The fourth assignment of error states:

THE TRIAL COURT ERRED IN NOT PERMITTING APPELLANT THE OPPORTUNITY TO SPEAK ON HER OWN BEHALF AT SENTENCING.

**{¶ 40}** Conkle asserts that she was not permitted to speak on her own behalf at sentencing, as was her right.

**{¶ 41}** The purpose of affording a defendant the right to speak at sentencing is to

allow the defendant an opportunity to state for the record any further information which the judge may take into consideration when determining the sentence to be imposed. Crim.R. 32(A). The right of allocution applies to both misdemeanor and felony convictions. *Defiance v. Cannon*, 70 Ohio App.3d 821, 828, 592 N.E.2d 884 (3rd Dist.1990); *State v. Brown,* 166 Ohio App.3d 252, 2006-Ohio-1796, 850 N.E.2d 116 (11th Dist.), ¶ 8. It also applies in minor misdemeanor cases. *State v. Evilsizor*, 2d Dist. Clark No. 94 CA 11, 1994 WL 527641 (Sept. 28, 1994). Where the record shows that the court did not afford the right of allocution, and where this is the only error in the record, the finding of guilt is not reversed, but instead the cause is remanded to the trial court for the sole purpose of resentencing. *Id.*

{¶ 42} In this case, at the end of trial, the court indicated that it would take the matter "under advisement" and would issue a decision in "ten days to two weeks." Then the following exchange occurred:

DEFENSE COUNSEL: Your Honor, also, my client thought about wanting to make a statement to you, but I am going to ask her to hold off on that and not to do that, but if you want to insist on doing that.

THE COURT: Miss Conkle the trial is over, this isn't the time for a statement.

DEFENSE COUNSEL: Okay, fair enough. Thank you.

{¶ 43} The State argues that Conkle "was afforded an opportunity [to speak] but her attorney spoke for her." We disagree with this characterization; neither the attorney nor Conkle was given an opportunity to address the court about sentencing, and even if

counsel's comments had been addressed to this issue, Conkle would have had an independent right to address the court. Crim.R. 32(A); *State v. Lundberg*, 2d Dist. Montgomery No. 22708, 2009-Ohio-1641, ¶ 26. Although the court may have been correct in its assessment that the end of trial was not the time for such a conversation – considering that Conkle had not yet been found guilty – she was entitled to that opportunity after the verdict was rendered. It appears that the court simply filed entries indicating its findings and imposing sentence, and thus did not afford Conkle her right of allocution. Conkle must be resentenced after having an opportunity to address the court.

**{¶ 44}** The fourth assignment of error is sustained.

**{¶ 45}** The fifth assignment of error states:

APPELLANT'S CONVICTION FOR AGGRAVATED MENACING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 46}** Conkle's argument under this assignment of error seems to relate only to the conviction based on the phone call on August 7, 2009. She claims that Hill's "claimed identification" of the caller as Conkle was not credible, was contradicted by the testimony of her coworkers, and should not have been credited.

**{¶ 47}** "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in

resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44.

**{¶ 48}** Hill testified that she recognized Conkle's voice when she answered the harassing phone call on August 7, that the call came from a "private" number, and that Conkle was the only person who had ever called her cell phone from a private number in the past. Although one of her coworkers recalled Hill's asking who it was on the phone, Hill explained that she had asked that question hoping that the caller would identify herself for the coworkers to hear. The trial court could have reasonably credited this testimony.

**{¶ 49}** Conkle also claims that the evidence did not establish that Hill was in fear after the phone call. The definition of aggravated menacing requires that the victim "believe that the offender will cause serious physical harm." R.C. 2903.21(A).

**{¶ 50}** Hill testified that she feared for her safety after the phone call on August 7, 2009, and that she spent her lunch hour and her evening attempting to file a police report about the incident. Her coworkers testified that the caller had threatened to kill Hill and to "kick her ass," and the caller indicated that she knew where Hill lived and worked. They further testified that Hill was "freaked out," shaking, scared, and crying after the call. The trial court reasonably concluded that Hill had believed she was at risk of serious physical harm.

**{¶ 51}** The trial court did not clearly lose its way or create a manifest miscarriage of

justice in convicting Conkle of the August 7 offense.

{¶ 52} The fifth assignment of error is overruled.

{¶ 53} The judgment of the trial court will be reversed only with respect to the imposition of sentence, and the matter will be remanded for resentencing. In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J., concurs.

GRADY, P.J., concurring:

{¶ 54} A party is entitled to make an offer of proof or "proffer" of evidence when the court makes a ruling that excludes the evidence. Evid.R. 103(A)(2). The trial court did not make a ruling excluding any evidence that Defendant Conkle wished to elicit from Jason Hill through his testimony at trial. Instead, Jason Hill failed to appear for the second day of trial and was therefore unavailable to testify. Even had Jason Hill been subpoenaed to appear as a witness but failed to appear, neither his absence nor the court's denial of a continuance could create a basis for Defendant's proffer of Jason Hill's possible testimony. The trial court did not abuse its discretion when it denied Defendant's request to proffer Jason Hill's testimony. I would overrule Defendant's third assignment of error on that basis.

{¶ 55} With respect to the fourth assignment of error, the more fundamental problem is that the trial court journalized its judgment of conviction imposing Defendant's sentence without having first conducted the sentencing proceeding that Crim.R. 32(A) requires, at which a defendant has a right of allocution. Crim.R. 43(A)(1) provides that "the defendant must be physically present at every stage of the criminal proceeding and trial,

including . . . the imposition of sentence . . ."  Failure to have Defendant Conkle physically present before the court for imposition of her sentence likewise denied Conkle her Crim.R. 32(A) right of allocution.

. . . . . . . . . .

Copies mailed to:

Christine L. Burk
Cheryl L. Collins
Hon. Robert E. Messham, Jr.