IN THE COURT OF APPEALS OF OHIO

SECOND APPELLATE DISTRICT

MONTGOMERY COUNTY

STATE OF OHIO

Plaintiff-Appellee                                          Appellate Case No.       25549

v.                                                          Trial Court Case No.    2012-CRB-8096

LARRY M. PIGG                                               (Criminal Appeal from

　　　　Defendant-Appellant                                 Municipal Court)


O P I N I O N

Rendered on the 25th day of October, 2013.

. . . . . . . . . . .

GARRETT P. BAKER, Atty. Reg. No. 0084416, Assistant City Prosecutor, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402

　　　　Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, 8 South Third Street, Tipp City, Ohio 45371

　　　　Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.


{¶ 1}    There are four issues presented in this appeal. The first and second are whether the trial court abused its discretion when it overruled Pigg's motion for a continuance and motion for acquittal under Crim.R. 29. We must also decide whether

Larry M. Pigg was denied his constitutional right to effective assistance of counsel when his trial attorney failed to raise self-defense. Finally, was the verdict against the manifest weight of the evidence?

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 20, 2012, Pigg was arrested and charged with one count of Assault, R.C. 2903.13. He was arraigned on September 21, and held in custody in lieu of a $50,000 bond until trial. On September 25, Katherine Moellman was appointed as his attorney. On that date, the State caused subpoenas to be sent to its witnesses, including all known persons involved in the altercation and a Dayton Police Officer.

{¶ 3} On October 4, Attorney Moellman met with Pigg at the jail. After reviewing the discovery and speaking with Pigg, she decided not to cause any subpoenas to be issued. The next day, prior to the commencement of the trial, Pigg asked for a continuance because not all of the witnesses subpoenaed by the State had appeared. The trial court overruled Pigg's motion.

{¶ 4} The trial court found Pigg guilty of Assault and released him from jail pending sentencing. Pigg was sentenced to 60 days in jail, with 16 days jail credit for time served. The remaining 44 days in jail were suspended on condition that Pigg successfully complete two years of probation.

{¶ 5} The conviction arose from an incident at the Mary Avenue Park in Dayton, Ohio. The altercation primarily involved Pigg and three minors, 14-year-old M.B., and her two little brothers, ten-year-old L.T. and eight-year-old K.T.

{¶ 6} Pigg was at the park sitting on a bench with his dog, Wiggles. According

to M.B.'s testimony at trial, M.B. and her friend, D., were walking to a slide in the park. She testified to the following facts.

{¶ 7} Pigg insulted the girls with vulgarities. They ignored him. When M.B.'s younger brothers arrived, Pigg insulted them and used racial slurs. There had been previous trouble between Pigg, M.B., and the boys. Pigg had directed racial slurs at them before. He had previously back-handed M.B. on the face, during one of many altercations.

{¶ 8} When the boys were within approximately five or six feet, Pigg swung something at them. M.B. wanted to avoid trouble and told the boys to go back to the house. Instead, the boys engaged Pigg and "talked back" to Pigg as he continued to direct racial slurs at them.

{¶ 9} M.B. attempted to intercede between the two sides and grab hold of her brothers. Pigg smacked, slapped, or pushed her on the side of the face, leaving two scratches under her eye, causing it to burn and hurt.

{¶ 10} After Pigg had physical contact with M.B., he started swinging at everyone and the boys started swinging back. To defuse the situation, M.B. got behind Pigg and pulled his T-shirt backwards until he landed on the ground.

{¶ 11} Pigg testified that the boys were the aggressors and that any contact he had with M.B. was unintended. He testified to the following version of events.

{¶ 12} Pigg said that when he saw the boys, he got up from the bench and tried to walk home. He did not want any trouble with the boys because he was on probation for a similar incident involving them and did not want to jeopardize his freedom. He had to walk slowly due to walking with a cane as a result of spinal injuries.

**{¶ 13}** Someone from behind kicked his cane out from under him. When Pigg fell to the ground, his elbow was bashed and began bleeding from the impact with the gravel. He leaned on his cane for support while trying to get up. One of the kids grabbed the cane and they struggled for control. Pigg lost possession of the cane. What seemed like five or six of them came at Pigg as a unit, surrounding him and throwing mulch and rocks. Wiggles ran away.

**{¶ 14}** When Pigg focused on one minor, others would run up from the other direction and strike him, sometimes in the head, with their hands and possibly the cane. They were more or less all around him. The boy holding the cane got close enough to Pigg that he was able to regain control of it. Pigg used the cane and began to rise from the ground. As he began to stand up someone pulled Pigg to the ground from behind, ripping his shirt. He heard someone bragging that they had ripped his shirt. Then, they left Pigg at the park.

**{¶ 15}** Pigg went to the minors' home to complain to an adult. He overheard an adult talking with the police. When Pigg told the adult what the children had done to him, Pigg received an unsatisfactory response. He went home and called 911. The police arrived and interviewed both sides. Pigg was arrested.

**{¶ 16}** Pigg denied saying racial slurs that day, although he admitted he had used them in the past in regards to these boys. He testified that he was determined to quit the practice because he had learned his lesson from the last time. Pigg denied swinging anything at the children. Pigg testified that he may have pushed M.B. when he was trying to get up, regain his footing, and get away. However if he did touch her, it was not intentional.

## II. LEGAL ANALYSIS

## A. FIRST ASSIGNMENT OF ERROR

{¶ 17}   Pigg's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S MOTION FOR CONTINUANCE AFTER TWO NECESSARY WITNESSES FAILED TO APPEAR UNDER SUBPOENA.

{¶ 18}   We find that the trial court did not abuse its discretion in denying Pigg's oral motion for a continuance on the day of trial. After reviewing the discovery, and speaking with her client the day before trial, Pigg's attorney decided to not issue subpoenas. The State issued subpoenas for five witnesses including M.B. and her two younger brothers, L.T. and K.T.

{¶ 19}   At the time the trial was scheduled to begin, no State witnesses had appeared. The trial court dismissed the case. When M.B. appeared, the trial court vacated the dismissal.   Since two of the children and the police officer failed to appear, Pigg made an oral motion for a continuance because he wanted the two boys to testify.

{¶ 20}   When the court was considering Pigg's motion for continuance, it was made aware that the minors were strongly urged by the school to not be absent that day because it was during "counting week", when the state government determines school funding based on attendance. L.T. and K.T. were evidently hostile witnesses. There was no indication whether the boys had been interviewed by Pigg's attorney or what facts Pigg wished to elicit from them at trial. The trial court expressed concern that Pigg was incarcerated. It noted that the State represented it intended to proceed to trial.

{¶ 21}   The Supreme Court of Ohio has adopted a balancing test to guide lower

courts in resolving the competing considerations when evaluating motions for continuance. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). The circumstances of each case are different. However, we are guided by our precedent and note that we have found no abuse of discretion in similar cases. *State v. Barksdale*, 2d Dist. Montgomery No. 25320, 2013-Ohio-2926, ¶ 15-17; *State v. Conkle*, 2d Dist. Montgomery Nos. 24161, 24163, 2012-Ohio-1772, ¶ 32; and *State v. Jaco*, 2d Dist. Montgomery No. 23341, 2010-Ohio-1789, ¶ 22.

{¶ 22} In *Barksdale*, the Appellant had subpoenaed two witnesses who had not appeared on the day of trial. The trial court overruled the defendant's motion for a continuance. We noted the applicable law by stating:

"The decision of whether to grant a continuance is a matter entrusted to the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078, syllabus. Therefore, a reviewing court will not reverse a trial court's decision to deny a motion for continuance absent an abuse of discretion. *Id.* at 67, 423 N.E.2d 1078. 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' *Unger v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, quoted in *State v. Unger*, supra, at 67 Ohio St.2d 67." *Barksdale* at ¶ 14, quoting *State v. Fairman,* 2d Dist. Montgomery No. 24299, 2011-Ohio-6489, ¶ 18.

**{¶ 23}** In *Barksdale,* we further noted that*:*

"Factors that a trial court must consider when ruling on a motion for a continuance include: (1) the length of the requested continuance; (2) any prior continuances; (3) the inconvenience to the litigants, witnesses, opposing counsel and the court; (4) reasons for the delay; (5) whether the defendant contributed to the delay; (6) and any other factors relevant to the unique facts of that case. *State v. Unger*, at 67–68, 423 N.E.2d 1078; *State v. Landrum* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710." *Barksdale* at ¶ 15, quoting *Fairman* at ¶ 19.

**{¶ 24}** Barksdale's attorney made an oral motion for continuance, after presentation of the State's case, during a jury trial. The trial court considered that the attorney had not been able to locate nor speak with the subpoenaed witnesses and was uncertain as to what their testimony would be beyond that indicated by Barksdale. *Barksdale*, 2d Dist. Montgomery No. 25320, 2013-Ohio-2926, at ¶ 16.

**{¶ 25}** We found it noteworthy that Barksdale requested a continuance of an indefinite length of time. It was unclear exactly when and where the missing witnesses would be available to testify. It was uncertain how helpful their testimony would be to resolve the issues in the case. When balancing these considerations against the inconvenience of all persons involved, we found the trial court had not abused its discretion. *Id.* at ¶ 17.

**{¶ 26}** We considered a second similar case where the defense did not subpoena the desired witness and the court denied a motion for a continuance. *Conkle*, 2d Dist. Montgomery Nos. 24161, 24163, 2012-Ohio-1772, at ¶ 32. In applying the

*Unger* factors, we noted the following factual considerations. Conkle did not subpoena the witness for that trial date. The desire to have the witness present was not made known to the trial court nor the State until the day the trial was scheduled to resume. From the facts known to the trial court it could have reasonably concluded that the witness would not have been particularly helpful to the defense. When balancing these considerations against the inconvenience of all persons involved, we found the trial court had not abused its discretion.  *Id.*

**{¶ 27}** The State cites a third similar case where the defendant did not subpoena its witness for the desired date and the trial court did not grant a continuance.  *State v. Jaco,* 2d Dist. Montgomery No. 23341, 2010-Ohio-1789.  We considered the following additional circumstances. Jaco orally made a motion for continuance on the first day of trial with no prior notice to the trial court or the State. *Id.* at ¶ 2-3. He did not subpoena the police officers who made the report, assuming they would attend the trial under a prosecutor's subpoena. *Id.* at ¶ 3.  Jaco did not request a continuance of a specific duration. *Id.* at ¶ 21.  The record did not establish that the absent witnesses would have been relevant and material. *Id.* at ¶ 23.  The State had procured the attendance of its required witnesses and was ready to proceed. *Id.* at ¶ 21.  When balancing these considerations against the inconvenience of all persons involved, we found the trial court had not abused its discretion.

**{¶ 28}** The trial court did not abuse its discretion when it overruled Pigg's motion for a continuance under the circumstances.

## B. SECOND ASSIGNMENT OF ERROR

**{¶ 29}** Pigg's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL AFTER THE STATE FAILED TO ESTABLISH THE NECESSARY ELEMENTS OF ASSAULT, AND ERRED BY RENDERING A VERDICT BASED ON INSUFFICIENT EVIDENCE.

{¶ 30} We use the same standard to review both issues presented in this assignment of error. *In Re B.N.C.,* 2d Dist. Montgomery No. 25615, 2013-Ohio-4071. In that case we stated:

" 'A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law.' *State v. Cherry*, 171 Ohio App.3d 375, 2007–Ohio–2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). 'The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' *Cherry* at ¶ 9." *In re B.N.C.,* at ¶ 23.

{¶ 31} In the case before us, Pigg was alleged to have committed a violation of R.C. 2903.13(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶ 32} Pigg argued during the trial that the State failed to prove that he *knowingly* caused or attempted to cause physical harm to M.B. "Knowingly" is defined by R.C. 2901.22(B), which states that: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 33} We have previously held that "punching someone" is sufficient to establish the element of "knowingly" under the statute. *State v. White*, 2d Dist. Montgomery No. 23816, 2010-Ohio-4537, ¶ 26, citing *State v. Totty*, 2d Dist. Montgomery No. 23372, 2010-Ohio-1234, ¶ 21, and *State v. Hill*, 2d Dist. Montgomery No. 20678, 2005-Ohio-3701. The trial court heard M.B. testify that at the time he was making physical contact with her, Pigg was calling her a "n****r," (a degrading ethnic slur). Tr., p.17. M.B. testified that she had experienced five to ten "not peaceful" encounters with Pigg prior to this incident. *Id.* at p. 20. M.B. testified that Pigg had backhanded her on her face on a previous occasion and struck her older sister with a cane. The trial court was entitled to believe this testimony over Pigg's version of the events and could reasonably infer that Pigg acted knowingly when he struck M.B.

{¶ 34} There is sufficient evidence that Pigg caused physical harm to M.B. by causing two scratches under her eye resulting in a burning sensation. M.B. testified that the slap hurt. M.B. described the physical contact in various ways during her testimony as a "smack," "slap," and "push" with an open hand. There is sufficient evidence to

support proof of the element of "physical harm" no matter which term the court believed. In view of the facts, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. We overrule Pigg's second assignment of error.

## C. THIRD ASSIGNMENT OF ERROR

{¶ 35} Pigg's third assignment of error states:

MR. PIGG WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO RAISE THE AFFIRMATIVE DEFENSE OF SELF-DEFENSE.

{¶ 36} Recently, we set forth the law on self-defense involving the use of a non-deadly force when we stated that:

[A] defense of self-defense involving the use of non-deadly force requires proof that: (1) the defendant was not at fault in creating the situation giving rise to the altercation; and (2) that the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that the defendant was in imminent danger of bodily harm and the only means of protecting himself or herself from that danger was by the use of force not likely to cause death or great bodily harm. *State v. Evans*, 8th Dist. Cuyahoga No. 96229, 2011–Ohio–5267, ¶ 23; *State v. Fritz*, 163 Ohio App.3d 276, 2005–Ohio–4736, 837 N.E.2d 823 (2d Dist.), ¶ 20. Myles offered no proof that she had reasonable grounds to believe, or did believe, that she was in imminent danger of bodily harm when she hit Mason. *State v. Myles*, 2d Dist. Montgomery No. 25160,

2013-Ohio-1821, ¶ 15.

**{¶ 37}** No version of the events in this case satisfies the elements of self-defense. There is no evidence that Pigg had a reasonable and honest belief that he was in imminent danger of bodily harm from M.B., and the only means of protecting himself from that danger was by the use of force against M.B. The definition of self-defense requires that Pigg have a reasonable and honest belief that the use of force against M.B. was the only means of protecting him from physical harm.

**{¶ 38}** Pigg testified that he did not knowingly have physical contact with M.B. He said he may have pushed her as he was trying to get up, but he never meant to intentionally lay a hand on her or any of the other children. Pigg did not offer any evidence that M.B. was an aggressor. He did not testify that M.B. acted in any way which would entitle him to use force against her.

**{¶ 39}** In *Myles*, we noted that when the evidence does not support the elements of self-defense, trial counsel is not ineffective for failing to argue it. *Id.* at ¶ 26-27. Therefore, Pigg's trial counsel was not ineffective.

### D. FOURTH ASSIGNMENT OF ERROR

**{¶ 40}** Pigg's fourth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY RENDERING A VERDICT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 41}** Pigg contends that his conviction is against the manifest weight of the evidence. We recently summarized the applicable law on this issue when we stated that:

When reviewing a manifest weight claim,

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011–Ohio–4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)."

Because the fact finder has the opportunity to see and hear the witnesses, substantial deference must be extended to its determinations of credibility. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The trier of fact may believe all, some, or none of what a witness says. *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). *State v. Carter*, 2d Dist. Montgomery No. 25447, 2013-Ohio-3754, ¶ 10-11.

{¶ 42} There was conflicting evidence, and the trial court was in the best position to resolve the credibility and weight to be given to the evidence. We do not see this as an exceptional case where the evidence weighs heavily in favor of the defendant or that there was a manifest injustice. We overrule Pigg's fourth assignment of error.

{¶ 43} All assignments of error have been overruled. We affirm the trial court judgment.

. . . . . . . . . . . . .

FROELICH and HALL, JJ.,   concur.


Copies mailed to:

Garrett P. Baker
Mark J. Bamberger
Hon. John S. Pickrel