[Cite as *State v. Hargrove*, 2024-Ohio-5236.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 30096 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 01667 |
| | : | |
| MICHAEL HARGROVE | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 1, 2024

. . . . . . . . . . .

MARY R. ADELINE LEWIS, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Michael Hargrove appeals from a judgment of the Montgomery County Court of Common Pleas, which revoked his community control sanctions and sentenced him to 18 months in prison. Hargrove claims that the trial court committed reversible error by denying him the right of allocution at the revocation hearing. For the following reasons,

the trial court's judgment will be reversed and the matter will be remanded for resentencing.

## I. Facts and Procedural History

{¶ 2} In July 2023, Hargrove was indicted for receiving stolen property, a fourth-degree felony. The indictment alleged that, on June 6, 2023, Hargrove had received, retained, or disposed of a 2001 white Chevrolet Express that belonged to J.A., knowing that the vehicle had been obtained through a theft offense. Four months later, on November 29, 2023, Hargrove pled guilty to the charged offense, and the trial court sentenced him to community control. The conditions of his community control included completing Bright View and any other recommended treatment, receiving mental health treatment, and paying $4,889 in restitution to J.A. Hargrove was told that he would be on "no breaks" status and that he faced a prison sentence of between six and 18 months if he violated the conditions of his community control.

{¶ 3} Almost immediately after sentencing, Hargrove's whereabouts became unknown. On December 18, 2023, Hargrove's probation officer informed the court that he had absconded. The court issued a capias for Hargrove's arrest, which was executed on December 27. On February 1, 2024, after a revocation hearing, the court reinstated community control with an additional sanction that he successfully complete the STAR Program. Four days later, the trial court added as an additional sanction that Hargrove enter and successfully complete the MonDay program. The record does not include a transcript of the January 31, 2024 revocation hearing, and it is unclear whether Hargrove was orally informed by the court of the MonDay requirement.

{¶ 4} On February 12, 2024, the trial court issued another notice of revocation, alleging that Hargrove had violated the conditions of his community control by "self-terminating" from the MonDay program on February 8. On March 20, 2024, the court held a revocation hearing, during which Hargrove's probation officer and Hargrove both testified. During his testimony, Hargrove described the circumstances of his leaving the MonDay program. The court found that Hargrove had violated the terms of his community control and that he was no longer amenable to community control sanctions. It imposed 18 months in prison and ordered Hargrove to pay restitution of $4,889 and court costs.

{¶ 5} Hargrove appeals from that judgment, raising one assignment of error.

## II. Right of Allocution

{¶ 6} In his sole assignment of error, Hargrove claims that the trial court erred in revoking his community control and imposing a prison sentence without first providing him the right of allocution.

{¶ 7} "[A] revocation of community control punishes the failure to comply with the terms and conditions of community control. . . ." *State v. Black*, 2011-Ohio-1273, ¶ 17 (2d Dist.). Crim.R. 32.3, which governs revocation of community control, provides that the trial court "shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed." Crim.R. 32.3(A).

{¶ 8} A community control revocation hearing is a sentencing hearing for purposes of R.C. 2929.19(A) and Crim.R. 32(A)(1). *State v. Jackson*, 2016-Ohio-8127, ¶ 11.

Accordingly, a trial court must afford an offender an opportunity for allocution before imposing a sentence for violating the conditions of community control. *Id.* at ¶ 1, ¶ 17.

**{¶ 9}** Specifically, the trial court must both "[a]fford counsel an opportunity to speak on behalf of the defendant *and* address the defendant *personally* and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." (Emphasis added.) Crim.R. 32(A)(1). R.C. 2929.19(A) also grants the offender (among others) the right to "present information relevant to the imposition of sentence in the case." The trial court must "ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender." *Id.* A trial court complies with a defendant's right to allocution when it personally addresses the defendant and asks whether he or she has anything to say. *E.g.*, *State v. Frazier*, 2019-Ohio-1546, ¶ 18 (2d Dist.); *State v. Osie*, 2014-Ohio-2966, ¶ 180.

**{¶ 10}** A defendant may decline to exercise his or her right to allocution. *State v. Shepherd*, 2021-Ohio-4230, ¶ 24 (2d Dist.); *Campbell* at 325 ("once the trial court has asked the defendant if he or she wishes to speak in allocution, he or she may waive the right to do so."). However, "Crim.R. 32(A)(1) imposes an affirmative duty on the court to speak directly to the defendant on the record and inquire whether he or she wishes to exercise that right or waive it." *State v. Sexton*, 2005-Ohio-449, ¶ 31 (2d Dist.).

**{¶ 11}** "The purpose of affording a defendant the right to speak at sentencing is to allow the defendant an opportunity to state for the record any further information which the judge may take into consideration when determining the sentence to be imposed."

*State v. Conkle*, 2012-Ohio-1772, ¶ 41 (2d Dist.). The right to allocution is "much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000). The defendant's right to allocution is absolute and is not subject to waiver by failing to object. *Campbell* at 324-325. Accordingly, if the trial court imposes sentence without affording the defendant an opportunity to allocute, resentencing is required unless the error was invited or harmless. *Jackson* at ¶ 15; *State v. Beasley*, 2018-Ohio-493, ¶ 200.

{¶ 12} Under the invited error doctrine, an appellant cannot attack a judgment for errors committed by himself or herself, for errors that the appellant induced the court to commit, or for errors into which the appellant either intentionally or unintentionally misled the court and for which the appellant was actively responsible. *State v. Minkner*, 2011-Ohio-3106, ¶ 24 (2d Dist.). An error is harmless when it does not affect the defendant's substantial rights. *See* Crim.R. 52(A).

{¶ 13} In this case, Hargrove testified on his own behalf at the revocation hearing. Defense counsel began by asking Hargrove if he had anything that he needed to tell the trial court about the circumstances of his leaving the MonDay Program. Hargrove answered:

Yes. I left the MonDay Program due to the fact that I completed it three – three different time[s]. Once, I completed it as a therapeutic program. I got out in 96 days. The other two times, I did it in Lorain County. It's called CBCF. It's a college program now after MonDay, and I completed it. I just finished not long ago. And just recently just finished that. I just moved

back here only three years ago. And I'm did very well both times. I have my credits in psychology and sociology through the cognitive program. I – I – I live by those rules and those grounds every day to embetter (sic) my Boy Scouts. And the MonDay Program, when it's therapeutic, I – I – those are my ground rules. I've raised my kids off that. I don't have nothing wrong with it, but I've – I've gotten what I need from the MonDay, I mean, you know, where I'm standing, from the (indiscernible) program. I understand that I'm here. Me and [my probation officer] didn't make it and get a chance to make it. Maybe he seen my record. Something, otherwise, you know, a reason why I missed my visit, I didn't have bus fare money. And he wanted me to come back the next week. Instead, I told him I want to come in – make it two weeks instead of one week, because I get Social Security. And I told him that day, I said, I'm not going to make it . . . I don't have the –

{¶ 14} At this point, the court interrupted Hargrove and reminded him that the question was the reasons he did not attend MonDay. Hargrove apologized and then said:

That's the only reason why. And I got a[n] assessment when I was here, when I first came, and that was through – it was a dual diagnosis by Dr. Monday (phonetic), and she recommended outpatient, which I had already signed up for with the 1/15. And I didn't have – my insurance was kind of jotty (sic), so I got Anthem Blue Cross Blue Shield, and that's why, you

know, I didn't – I don't – I don't – it's not nothing. I just don't feel like – I got everything. I love – I love that program. It's cool. But I – I don't feel like I need six months of that program no more. Ain't nothing else more I'm going to do more after I can't go anymore off of that. I love to learn, and I live – live to learn. But sir, it's just nothing – I'm very apologetic to the Court and the situation for the time being, but I'm not – I'm 45. I'm taking pride in my life. I take pride in everything I do. I really am a good man. I went through a lot in life, but I've – I've changed completely. I've been locked up five months over this case from now to beginning, you know?

{¶ 15} Hargrove's direct examination continued:

[DEFENSE COUNSEL:] Mr. Hargrove, was there anything that you could tell us about [w]hat led you to believe that you should leave the MonDay Program?

[HARGROVE:] Yes. I find – I find, through 115, I learned me. It was, like, the final rebirth of myself.

[DEFENSE COUNSEL:] Excuse me, Mr. Hargrove. Just for the clarity of the record, when you say 115, what are you talking about?

[HARGROVE:] I went there because they have – I went there because they have – I went there for, what do you call it, I'm bipolar, and I have ADHD and dyslexia, so the psychiatrist let me know about my drugs, the rest of my little situation with drugs and everything, and dealt with me, my depression, with my dad dying and everything. And they just glue me up, and they tell

me exactly what I need, and that's exactly what I know I need. And that's why I've been sticking with them. And it was just everything I need. And then from then on, I've – that's what made me be able to change, completely change and more I am. I'm staying strong, and I'm, you know – and my head is up. You know, I could get depressed like everybody else do, but no. I – I'm – I'm – I feel good to say I'm a citizen now. I – I make mistakes. I'm still human, but I'm – I'm an honest citizen for once in my life. That's really all I can say, sir.

[DEFENSE COUNSEL:] Mr. Hargrove, do you have anything else that you need to say about not attending the MonDay Program?

[HARGROVE:] I just feel like the MonDay Program is – is good for a person that has not been through it. If they really want to change, it's good for them. I made those changes, so I'm secure in saying I – I thank you for the MonDay Program. I – I appreciate it with all my heart. I love that program and thank you for it. But three times is enough for me.

**{¶ 16}** On cross-examination, Hargrove testified that he had not been notified that he needed to attend MonDay as part of his community control. He said that the corrections officers made him go. Hargrove further testified that he contacted his probation officer before deciding not to complete the MonDay program. He indicated that his probation officer did not say that he had to complete it; instead, he was told that if he failed to do so, he would have to go back before the judge.

**{¶ 17}** On redirect examination, defense counsel asked Hargrove if he would have

stayed at the MonDay program if he had known that leaving would be a violation of his community control. Hargrove replied that he could not say that he would have. He repeated that he had gotten everything he needed from the MonDay program.

**{¶ 18}** At that point, the trial court found that Hargrove had violated the terms of his community control. The court told Hargrove that he was on "no breaks" status and that the court had added a sanction that he attend and complete the MonDay program. The court found that Hargrove had been timely transported to MonDay, but he had elected not to complete it. The court further stated: "It appears from your testimony and what I've seen that you want to decide what's best for you, that you don't want to follow the rules and regulations of this Court or the probation officer. And you're not the one that decides what punishment should be given. MonDay Program is a program to try to assist you, and we tried to assist you, and that didn't happen." The court then concluded that Hargrove was not amenable to community control, and it revoked Hargrove's community control and imposed an 18-month prison sentence.

**{¶ 19}** The trial court did not ask Hargrove or his attorney if they had anything to say before it imposed a sentence. Rather, the trial court sentenced Hargrove to prison immediately after determining that he had violated the conditions of his community control. The record thus supports Hargrove's contention that he was denied his right to allocution.

**{¶ 20}** The State agrees that the trial court did not offer Hargrove or his counsel an opportunity for allocution before sentencing Hargrove. It asserts, however, that this failure was harmless given Hargrove's lengthy explanation regarding why he chose to

leave the MonDay program, why he felt other sanctions would be more appropriate, and how his treatment had benefited him. The State argues, "Had the trial court afforded Hargrove another opportunity to explain his actions and advocate for different community-control sanctions prior to imposing sentence, it is unlikely the trial court's sentence would have changed." We disagree that the trial court's failure was harmless.

{¶ 21} As an initial matter, we have recently rejected the contention that the denial of the right of allocution is harmless "unless the defendant comes forward with specific information that he would have presented to the trial court had he been given the opportunity, information which could have mitigated the offense in relation to the punishment the court could impose." (Citation omitted.) *State v. Champeau*, 2024-Ohio-4602, ¶ 23-24 (2d Dist.) (recognizing that *State v. McBride*, 2001 WL 62543 (2d Dist. Jan. 26, 2001), is no longer good law). Indeed, the Ohio Supreme Court has stated that a defendant should not be required to specify what additional information would have been presented to the trial court to establish that the lack of allocution was not harmless. *Jackson*, 2016-Ohio-8127, ¶ 16.

{¶ 22} We acknowledge that the Ohio Supreme Court has, under certain circumstances, found that a defendant's prior statements rendered the lack of allocution harmless. In *State v. Reynolds*, 80 Ohio St.3d 670 (1998), a death penalty case, the trial court failed to ask the defendant if he wanted to make a statement prior to sentencing. The Court nevertheless found the error harmless, because the defendant had presented evidence and made an unsworn statement during the penalty phase, the defendant had sent a letter to the court, and defense counsel had made a statement on the defendant's

behalf (which included that "Reynolds has addressed the court previously by way of a letter"). Even there, though, the *Reynolds* court cautioned that "[t]he penalty phase in a capital case is not a substitute for a defendant's right of allocution. Failure to provide a defendant the right of allocution could constitute reversible error in a future case." *Id.* at 684.

{¶ 23} Other Ohio appellate courts have likewise held that a trial court's failure to ask a defendant if he or she wanted to make a statement before sentencing was harmless where defense counsel advocated on the defendant's behalf and the defendant had an opportunity to speak in mitigation. *E.g.*, *State v. Kincaid*, 2023-Ohio-1873 (1st Dist.) (lack of allocution was harmless where defendant repeatedly interjected during defense counsel's arguments on sentencing); *State v. Masson*, 2017-Ohio-7705 (7th Dist.).

{¶ 24} In contrast, in *State v. Poe*, 2018-Ohio-3279 (1st Dist.), the trial court's failure to ask the defendant if she wished to exercise her right to allocution was not harmless where, although there was discussion between the court and Poe during sentencing, it was not directed to mitigation. After the trial court found Poe guilty of criminal damaging based scratching her neighbor's car, the court called for "mitigation." Defense counsel spoke on Poe's behalf. The court then asked Poe about some of the testimony that had been provided at trial (whether she had given the victims permission to park in her space) but did not ask her if she wished to speak on sentencing. The First District found reversible error, reasoning that Poe was never adequately informed of or afforded her right of allocution, and the brief exchange between the court and Poe touched on guilt, not on punishment.

{¶ 25} In this case, Hargrove provided extensive testimony regarding his withdrawal from the MonDay program during the merit stage of the revocation hearing. Defense counsel's questions focused on that issue, and the trial court redirected Hargrove when his answer began to stray from that concern. Hargrove was not asked during his testimony what he believed the consequence should be if he were found to have violated his community control sanctions, and his testimony did not address that question. *Contrast State v. Hill*, 2018-Ohio-4647, ¶ 13 (3d Dist.). During the penalty stage of the hearing (which immediately followed the merits stage), neither Hargrove nor his defense counsel had an opportunity to argue for continued community control (with or without modifications) or for a less severe prison sentence. We cannot conclude that the trial court's failure to comply with Crim.R. 32(A)(1) and R.C. 2929.19(A) was harmless.

{¶ 26} Hargrove's assignment of error is sustained.

### III. Conclusion

{¶ 27} The trial court's judgment will be reversed, and the matter will be remanded for resentencing.

. . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.